JENKINS *vs.* HOOKER, adm'r of G. Hooker, deceased.

The act of congress of June 7, 1832, providing for additional pensions to soldiers in the war of the revolution, declares that the pay thereby allowed shall not be in any way transferable, but shall enure wholly to the personal benefit of the soldier entitled to the same. And it is the established policy of our government that its pensions shall be received by those to whom they are granted ; and no agreement which has the effect to evade the law, or contravene its policy, can be sustained.

But an instrument executed by H., reciting that he is a pensioner of the United States, and is entitled to an addition to his pension, under the act of June 1832, and that J. has undertaken, at his request, and on his behalf, to prosecute his claim to such increased pension ; and promising and agreeing, in consideration thereof, that in case J. shall obtain such additional allowance or increase of pension he shall receive, for his services in obtaining the same, one third part of the amount of such increase, &c. is valid, and may be enforced.

THIS action was tried at the Albany circuit, in September, 1852, before Mr. Justice HARRIS. The plaintiff claimed to recover upon a contract executed by the defendant's intestate, as follows : " Whereas it is understood that I, Gilbert Hooker, of Clyde, Wayne Co., N. Y., a pensioner of the United States, under the act of March 18, 1818, am entitled to an addition to my pension, under the act of June 9, 1832, for services rendered by me as an enlisted teamster in the war of the revolution ; and whereas Lemuel Jenkins of the city of Albany has undertaken, at my request and on my behalf, to prosecute my claim to such increased pension, in consideration thereof I hereby promise and agree to and with said Jenkins, that in case he shall obtain such

additional allowance or increase of pension, he shall receive for his services in obtaining the same one third part of the whole amount of such increase up to the time of the allowance of the same.    Dated Galen, September 7, 1846.

Witness, Zina Hooker.                    GILBERT HOOKER."

The plaintiff alleged that immediately after the execution of this agreement, he commenced and continued the prosecution of the claim, and spent considerable time and incurred considerable expenses therein, until sometime prior to the 14th of May, 1851, when he succeeded in obtaining an increase of the pension, to the amount of $1713.25.    On the 9th of January, 1849, and before the claim was finally allowed, Gilbert Hooker died, and the defendant was appointed his administrator.    The increase of pension thus allowed was received by the defendant, as administrator.    The plaintiff having given evidence tending to establish the allegations of his complaint, and rested, the defendant's counsel moved for a nonsuit on the ground, 1. That the contract was void, being in violation of the provisions of the pension act; 2. That it was, in effect, in furtherance of an unlawful object, seeking to secure conditionally to the plaintiff a portion of the increase, to the exclusion of the pensioner, which was against the spirit and policy of the pension act and in fraud of its provisions; and 3. That the contract was void for maintenance.    The motion was denied, and the counsel for the defendant excepted to the decision.    The defendant then gave some evidence tending to show that after the death of the pensioner he employed another person to assist in obtaining the increased allowance.    The testimony being closed, the defendant's counsel requested the court to charge the jury that the contract was void, it having been entered into in violation of the provisions and policy of the pension act.    Also that the plaintiff having failed to obtain the increase during the life of Gilbert Hooker, and as the heirs only obtained it by procuring the services of other agents, the plaintiff was not entitled to recover the compensation provided by the conditional contract.    Also that, if the plaintiff failed to perform all the services necessary to obtain the money, he could not recover the compensation provided by the contract.    The

court refused to charge as requested, and the defendant's counsel excepted.

The court then charged the jury, that if they believed from the evidence that the plaintiff had rendered his services in procuring the increase of pension, without which services the heirs would not have obtained it, the plaintiff was entitled to their verdict for one third the amount of such increase. To which charge the defendant's counsel excepted. The jury found a verdict for the plaintiff for $571.08, being one third part of the amount of the increased pension. The court ordered judgment to be stayed, and that the motion for a new trial upon the exceptions be heard, in the first instance, at the general term.

*A. Dean,* for the plaintiff.

*J. K. Porter,* for the defendant.

*By the Court,* HARRIS, J. The act of congress providing for the pension in question declares, that the pay thereby allowed shall not be in any way transferable, but shall enure wholly to the personal benefit of the soldier entitled to the same. (4 *U. S. Statutes at Large,* 530 ; *Act of June* 7, 1832.) If it be true, therefore, that the agreement between the plaintiff and the intestate was, in legal effect, an equitable transfer or assignment of a part of the soldier's pension, or, if it is to be regarded as an executory agreement for such transfer, it is void. It is the established policy of our government that its pensions shall be received by those to whom they are granted, and no agreement which has the effect to evade the law, or contravene its policy, can be sustained. It becomes important, therefore, to inquire whether this is such an agreement.

The intestate believed that he was entitled, under the act of 1832, to an increase of his pension. To obtain it, the government must be furnished with the proofs required by the act. It was competent for the intestate to employ the plaintiff to perform this service for him. If he did perform it, he was entitled legally and morally to be paid for such service. It was compe-

tent for the parties to agree, beforehand, upon the measure of such compensation. They might agree, too, that the compensation should depend on the plaintiff's success in prosecuting the claim; that in case of failure he should have nothing for his services; while, if he succeeded, his compensation should be greater than, under other circumstances, might have been deemed reasonable. These are propositions which no one will dispute. Does the contract in question amount to any thing more? The plaintiff, at the request and on behalf of the intestate, had undertaken to institute measures to obtain the increase of pension. If he should fail in his efforts, he was to go unrewarded; but if he succeeded he was to receive for his services " one third part of the whole amount of such increase." The effect of the agreement was to fix the measure of compensation, if the plaintiff should become entitled to compensation at all, by a standard not yet ascertained. It was to be a sum equal to one third of another sum not yet known. I know of no legal objection to such a contract. Certainly it is no uncommon thing.

Suppose that, instead of stipulating that the compensation should be one third part of the amount allowed, it had been fixed at $571.08, the amount of the verdict, would any one question the validity of the agreement? The parties, if capable of contracting at all, might agree upon the amount of compensation. They might also agree that the question of compensation should depend upon a contingency and then, again, that the amount should depend upon another contingency. As I understand this agreement, it provides for nothing more. It gives to the plaintiff no interest in the pension, either legal or equitable. It provides for no transfer or assignment. If the pension should be allowed, the pensioner himself, or his representatives, alone could receive it. Whether received or not, the pensioner, the moment the increase was allowed to him, became the debtor of the plaintiff in a sum equal to one third of its amount. The plaintiff had no claim upon the pension, the allowance of which he had thus obtained, for the payment of the amount due him upon the agreement, any more than any other creditor. Upon the death of the pensioner, his debt, like any other debt, could only be

collected through a legal course of administration. He was to take his chance of payment with other creditors. The agreement fixed the amount in which the pensioner was to become indebted to the plaintiff for his services by the amount of the pension to be allowed, but it gave him no lien upon it. He had no security for his debt, beyond any other creditor.

There is nothing in this agreement which can render it void for maintenance. It has no reference to any suit pending or to be commenced, and without this there can be no maintenance. (*Thallhimer* v. *Brinckerhoff*, 3 *Cowen*, 623.)

The verdict, too, is sustained by the evidence in the case. Every thing that was done to obtain the allowance of the pension, was done through the plaintiff's agency. Mr. Sylvester, who acted on behalf of the plaintiff before the commissioner of pensions, testifies that there were no papers before the commissioner when the claim was allowed except those furnished by him. The only papers furnished by the defendant through the agent he employed were a power of attorney authorizing that agent to act, and the proof of the death of Gilbert Hooker, and even these were received at the pension office after the claim had been allowed. There can be no doubt, therefore, that the plaintiff performed the contract on his part by obtaining the increase of pension. There was no evidence to warrant the jury in finding that the increased pension was only obtained by means of the services of other agents employed by the defendant, or that the plaintiff failed to render all the services which were necessary to obtain the allowance. Had these questions been submitted to the jury as requested by the defendant's counsel, and the verdict had been in favor of the defendant, it could not have been sustained. There was no evidence to support it. It was therefore right to refuse to charge as requested upon these points.

The motion for a new trial should be denied.

[ALBANY GENERAL TERM, February 6, 1854. *Wright, Harris* and *Watson*, Justices.]