PELATIAH J. MARSH and ANDREW M. BATES, Respondents, *v*
WILLIAM A. RUSSELL and HUGH A. COWAN, Appellants.

(GENERAL TERM, THIRD DISTRICT, MARCH, 1870.)

In June, 1864, four persons, anticipating a government call for troops, agreed
to divide the profits and share the losses of any contracts made by them
individually or collectively, for furnishing the quota of recruits of one
or more towns of a certain county, for a sum not less than $500
per man, and that they or either of them, should make no agreement
to furnish the quota of any town for a less sum than $500 per man,
without the assent of all.—*Held,* that the agreement was designed to
restrain competition in procuring enlistments, and tended to increase
the burdens of taxation and was void as against public policy, and
that every part of the contract into which it had been incorporated was
also void.

THIS was an appeal from a judgment in favor of the plain-
tiffs, entered upon the report of a referee, in an action brought
to recover a share of alleged profits in the recruiting business,
and for disbursements claimed to have been made in such
business, by the plaintiffs, on the defendants' account.

It appeared that on the 18th June, 1864, the defendants
who resided at Salem, in Washington county, made a con-
tract with the plaintiffs who resided in Troy, and were there
engaged together in the recruiting business, respecting the
quotas of troops which it was supposed the government would
require from the towns of Washington county.   The con-
tract was as follows, viz: " It is hereby understood and
agreed by and between the undersigned, that if the under-
signed, or either of them, shall make a contract with one
or more towns in Washington county, N. Y., to fill the
quota of such town or towns, under an anticipated call of the
government, for a sum not less than five hundred dollars per
man, that all gains or profits which may accrue in such
business shall be divided equally, share and share alike,
between the undersigned, and that all losses shall be paid
equally by them.   It is further understood and agreed, that

the undersigned, or either of them, shall make no agreement to furnish the quota of any town for a less sum than five hundred dollars per man, without the consent of all the undersigned. That if two or more towns shall be contracted with to furnish their respective quotas for five hundred dollars per man, or more, by the undersigned, then, and in that case, it is hereby understood and agreed, that the undersigned shall furnish eighteen men, or whatever number the quota of the town of Hebron may be, at the rate of four hundred dollars per man.

"*June* 18, 1864.          " WM. A. RUSSELL.
                            H. R. COWAN.
                            A. M. BATES.
                            P. J. MARSH."

After the execution of this contract, the call for troops was made, and the defendants, individually, or in connection with others, made various contracts with different towns of Washington county, this action was brought to recover moneys claimed to be due in respect thereof, under the agreement above set forth.

The referee reported that after deducting payments there was due the plaintiffs from the defendants including interest, $4,692.65. Exceptions were taken to the report, judgment was entered, and the defendants appealed.

*S. Hand*, for the appellants.

*Wm. A. Beach*, for the respondents.

Present—HOGEBOOM, PECKHAM and MILLER, JJ.

By the Court—MILLER, J. By the terms of the contract entered into between the plaintiffs and the defendants, it was agreed that if the parties, or either of them, made a contract with one or more towns in Washington county to fill the quotas of said town or towns, under an anticipated call of the

government, for a sum not less than $500 per man, all profits and losses in such business should be equally divided between them. It was also stipulated that the parties, or either of them, should make no agreement to furnish the quota of any town for less than $500 a man without the consent of all of them.

It is insisted by the defendants' counsel that the stipulation set forth was void as against public policy. Here is a positive agreement between the parties to the instrument to keep up the price of procuring recruits, and the question arises whether such a contract is within the well known rule, that all combinations to keep up prices and prevent competition are illegal and of no effect. Had these parties a right thus to agree among themselves not to furnish recruits for a less sum than the one named in the written agreement? By the contract the parties had a right to furnish the men together or separately, and were to share the profits and losses. They had a common interest in the final profits or losses, but there was no such understanding as would constitute them a firm or copartnership engaged in the same general business. If all of them agreed with a third party, of course all would be liable; but if one only made a contract, the other parties who did not participate in it would not be bound by the acts of that one. Such being the relative position of the parties, it becomes important to consider the principle, which is applicable to a contract made under the circumstances presented in the case now to be determined.

In *Stanton* v. *Allen* (5 Den., 434), it was held, that an association among the whole or a large portion of the proprietors of boats, on the Erie and Oswego canals, under an agreement to regulate the price of freight and passage, by a uniform scale to be fixed by themselves, and to divide the profits of their business according to the number of boats employed by each, with provisions prohibiting the members from engaging in a similar business out of the association, is illegal, for the reason, that the tendency of such agreement is, to increase prices, to prevent wholesome competition and

to diminish revenues and is therefore against the public policy and void by the principles of the common law. In the case cited, there were articles of association signed by the officers of separate lines of transportation on the canals, for the purpose of establishing fair and uniform rates of freight. Each of the parties was to put in as many boats, as they subscribed shares, to pay a certain amount, and after making certain deductions provided for, the balance, whether freight or loss, was to be divided and proportioned among the several parties according to their relative number of shares. The learned judge who wrote the opinion says: "The association being thus secured against internal defection and external encroachments, and the members having thrown their concerns into stock to derive an income in proportion to the number of shares they hold, and not according to their merit and activity in business, and safe against the reduction of compensation that would otherwise follow mean accommodations and want of skill and attention, the public interest must necessarily suffer grievous loss." These remarks are applicable to the case at bar. According to the agreement before us, it was of no consequence how many recruits each man obtained, or how much activity he exhibited in obtaining them, all were entitled to an equal division and share, and the public were to be burdened with the highest price by the combination. In reply to the position, that the association was a partnership, he remarks: "But whether it is of that character or not, is not material. No one can be deceived by any supposed analogy between the principle of uniformity of price among the members of an ordinary business firm and the same thing in a confederacy formed for no other purpose or use than to bring it about." With nothing to show a partnership, in the instrument under which the plaintiff's claim to recover, it is too apparent to admit of a question that the arrangement was a confederacy to prevent competition, and not the agreement between persons engaged in the same general business as copartners.

In *Hooker* v. *Vandewater* (4 Den., 349), the proprietors

of five several lines of boats, engaged in the business of transporting persons and freights on the canals, entered into an agreement among themselves to run for the remainder of the season of navigation, at certain rates for freight and passage then agreed upon ; but which were to be changed whenever the parties should deem it expedient, and to divide the net earnings among themselves, according to certain proportions fixed in the articles. In an action on the agreement against a party who had failed to make payment according to contract it was held, that the agreement was a conspiracy to commit an act injurious to trade, and illegal and void. JEWETT, J., says : " That the raising of the price of freight for the transportation of merchandise or passengers upon our canals, is a matter of public concern, and in which the public have a deep interest, does not admit of doubt. It is a familiar maxim, that competition is the life of trade. It follows, that whatever destroys or even relaxes competition in trade is injurious, if not fatal to it. (*The People* v. *Fisher*, 14 Wend., 9.) The object of the agreement as expressed in the written contract is plausible enough, but it is impossible to conceal the real intention." It is very evident, from the agreement in evidence, that the object and purpose of the contract, was to destroy competition in obtaining the enlistment of recruits for the army, and the case is analogous in many respects to those cited. The law has always regarded such contracts with signal disfavor, as affecting the character and value of property, and services rendered, injuriously, and as utterly void. It has also been held, in numerous cases, that all agreements between parties to prevent competition in bidding for property sold, are unlawful, and that no action lies for the consideration agreed to be given. (See *Wilbur* v. *How*, 8 Johns., 444 ; *Doolin* v. *Ward*, 6 Johns., 194 ; *Swan* v. *Chropenning*, 20 Cal., 182 ; *Gardner* v. *Morse*, 25 Maine, 140 ; *Gulick* v. *Ward*, 5 Halst., 87.)

The contract in question, was made at a period when recruits were required in large numbers for the army, and

Marsh *v.* Russell.

could only be obtained by the promise of large sums of money, by way of bounties, which could only be raised by the imposition of heavy taxes upon the people.    The interest of every taxpayer, clearly, was to fill the quota of men required at the lowest amount, and by the least expenditure of money which could possibly answer the purpose.    The effect, and manifest aim of the contract, was to produce directly a contrary result, and to increase the burdens of taxation upon those who eventually would be obliged to pay the expenditures required.    It was intended, so far as these parties were concerned, to prevent the procuring of any recruits, for a less sum of money than $500 a man, thus restraining competition in the business of furnishing men, and by combinations, to obtain the largest possible amount. It was a combination to increase taxation in the localities which were bound to furnish recruits, in opposition to the interests of the entire community.    The agreement not to furnish for a less sum than $500 was an important part, a vital and essential element of the contract, and contaminated and impaired the whole consideration.    Being void in part, the illegality renders the whole agreement invalid and void. (See *Brown* v. *Brown*, 34 Barb., 533 ; *De Beerski* v. *Paige*, 47 Barb., 173 ; 36 N. Y., 537.)

The fact that the agreement in question was only entered into by four persons does not, in my opinion, militate against its being considered as against public policy and void, for if this number can thus combine and confederate to increase taxation and impose additional burdens upon the people, then it may also be done by any larger number who may be engaged in the same unlawful object and purpose.    It is not the number which stamps the agreement as illegal and void, but the nature and character of it ; the purpose for which it was designed, and the object in view, the raising of the price of recruits.    It is this illegal and improper purpose which affects the whole contract and renders it invalid and void.    The contract being unlawful, the action cannot be maintained, and the decision of the referee was erroneous.

As a new trial must be granted for the reasons stated, which strike at the very foundation of the plaintiff's action, it is not necessary to examine and consider the other questions raised.

HOGEBOOM, J,, concurred.

New trial granted