JOHN HONEGGER et al., Appellants, *v.* HENRY WETTSTEIN et al., Respondents.

The firm of W. O. & Co., of New York, ordered certain goods to be manu- factured for them by plaintiffs at Z., Switzerland, at a specified price. Plaintiffs manufactured the goods, but, they having declined in the mar- ket, refused to deliver ; they offered, however, to give said firm credit for a sum specified, and to send the goods on consignment, W. O. & Co. having the privilege as fast as the indebtedness was reduced below that sum, to take from the consignment sufficient goods to bring the debt up to the prescribed credit. The goods were delivered with that understand- ing. In an action against the individual members of said firm to recover for the goods so delivered, M. who had been appointed receiver of the firm in an action to close up the partnership, and who, by order of the court made on his own application, had been permitted to come in and defend, set up as a defense a violation of the revenue laws and proved

upon the trial that the goods were sent through the custom-house at a valuation less than the stipulated price, the invoices accompanying them being made out at the market price on the day the goods were shipped from Z., while invoices at the stipulated price were given to the purchasers. The original defendants did not interpose this defense. Plaintiffs' counsel requested the court to direct a verdict against the original defendants with a proviso that plaintiffs should have no remedy as against the funds in the hands of the receiver. This was refused and a verdict directed for all the defendants. *Held*, error; that conceding a violation of the revenue laws was proved, as to which *quære*, the original defendants were not entitled to avail themselves of such a defense, as they had not pleaded it.

*It seems* that when it appears, in an action to recover for goods sold, by plaintiff's own proof, or upon a defense properly interposed, that the goods were bought and sold for the purpose of being introduced into the country in violation of its revenue laws, and that the vendor shared in the illegal transaction or assisted in defrauding the customs, plaintiff may not recover; but unless it appears upon plaintiff's own showing or is pleaded as a defense, defendant is not entitled to the benefit of it as such.

O., one of said firm, was called as a witness for the receiver; his testimony was not directly contradicted. The court refused to submit the question of his credibility to the jury. *Held* error, that as he was an interested witness the question was for the jury.

The order allowing the receiver to come in and defend was granted upon his petition, in which he averred collusion between plaintiffs and one or more of the defendants, but only on information and belief, without stating any facts, or sources of information upon which the belief was based. This averment was positively denied by plaintiffs. *Held*, that the petition was insufficient to support the order and the same was improperly granted.

Also *held*, that the receiver had no such interest in the action as authorized him to intervene.

Also *held* that the order was reviewable here. (Code of Civil Procedure, § 1316.)

*Honnegger et al.* v. *Wettstein et al.* (15 J. & S. 125) reversed.

(Argued December 3, 1883 ; decided December 14, 1883.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made March 8, 1882, which affirmed a judgment in favor of defendants, entered upon a verdict, and also affirmed an order of Special Term, making Feodore Mierson, as receiver of the assets of the firm of Wettstein, Oehninger & Co., a party de-

fendant, and giving him leave to appear and defend. (Reported below, 15 J. & S. 125.)

The nature of the action and the material facts are stated in the opinion.

*D. M. Porter* for appellants. It was not illegal for plaintiffs to take the risks of the consignment. (*Brooks* v. *Avery*, 4 Comst. 225.) If the indebtedness of the defendants' firm had not been reduced below 50,000 francs at any time, the goods would still continue the property of the plaintiffs. (*Converseville Co.* v. *Chambersburg Co.*, 14 Hun, 609 ; *Walker* v. *Buttrick*, 105 Mass. 237.) The custom laws are *malum prohibitum*, and not *malum in se*, and have no extra-territorial force, and the plaintiffs were not bound to know their provisions. (*Charles* v. *People*, 1 Comst. 180 ; *King* v. *Doolittle*, 1 Head [Tenn.], 77 ; *Arms* v. *Dauchy*, 82 N. Y. 443.) The defendants waived the alleged illegality in the transactions, if any there were, and affirmed the transactions, and the receiver being a third party, cannot object. (*Merritt* v. *Millard*, 4 Keyes, 308 ; *Pepper* v. *Haight*, 20 Barb. 429.) The receiver cannot retain any of the proceeds of the property consigned on account of any illegality, because he is a mere agent. (*Parkersburg* v. *Brown*, 16 Otto, 487 ; *Murray* v. *Vanderbilt*, 39 Barb. 140 ; *Bonsfield* v. *Wilson*, 16 M. & W. 184, 185 ; *Pratt* v. *Short*, 79 N. Y. 437 ; *Pratt* v. *Eaton*, id. 449 ; *Dickinson* v. *Gilliland*, 1 Cowen, 481 ; *Acker* v. *Ledyard*, 8 Barb. 514–518 ; *Arden* v. *Patterson*, 5 Johns. Ch. 44, 52 ; *Simson* v. *Hart*, 11 Johns. 63 ; *In re Negus*, 10 Wend. 33, 34, 41.) The defendants Wettstein and Meyer have not alleged any defense of fraudulent importations, and consequently plaintiffs are entitled to recover against them. (*O'Tool* v. *Garvin*, 1 Hun, 92 ; *Brennan* v. *The Mayor, etc.*, 62 N. Y. 365 ; *Paige* v. *Willet*, 38 id. 28 ; *Potter* v. *Smith*, 70 id. 299 ; *McFerran* v. *Taylor*, 3 Cranch, 270 ; *Akin* v. *Albany M. R. Co.*, 14 How. 337 ; *Sawyer* v. *Chambers*, 11 Abb. Pr. 110, 112 ; *Webster* v. *Bond*, 9 Hun, 437 ; *Judd* v. *Young*, 7 How. Pr. 71 ; *Chandler* v. *Powers*, 25 Hun, 445 ; *Hornby* v. *Gordon*, 9 Bosw. 656, 658–9.) Third persons should not be permitted to intervene and be made par-

ties to a pending suit upon their own application, unless their presence is necessary for an entire adjudication of the questions between the original parties, and then only in equity. (*Kelsey* v. *Murray*, 18 Abb. Pr. 294; *Davis* v. *Mayor, etc.*, 14 N. Y. 506, 526, 527–8; *Tallman* v. *Hollister*, 19 How. Pr. 508; *Judd* v. *Young*, 7 id. 79; *Ruger* v. *Heckel*, 85 N. Y. 483, 484; *N. Y. S. S. M. P. A.* v. *Remington*, 89 id. 22; Code of Civil Procedure, § 452.) The defendant Mierson certainly was entitled to nothing more than to protect the fund in his hands. (*Bostwick* v. *Menck*, 40 N. Y. 383.) The law will not presume an agreement void as illegal or against public policy when it is capable of a construction which would make it consistent with the law, and valid. (*Curtis* v. *Gokey*, 68 N. Y. 300, 304; *Bigelow* v. *Benedict*, 70 id. 203, 204, 205; *Ormes* v. *Dauchy*, 82 id. 443; *Thrall* v. *Newell*, 19 Vt. 202; *Shultz* v. *Hoagland*, 85 N. Y. 464; *Tracy* v. *Talmage*, 14 id. 162; *Lowell* v. *B. & L. R. R. Co.*, 23 Pick. 24; *Inhabitants of Worcester* v. *Eaton*, 11 Mass. 368; *People* v. *Courtney*, 28 Hun, 589; *Gildersleeve* v. *Loudon*, 73 N. Y. 609; *McNulty* v. *Hurd*, 86 id. 547; *Kavanagh* v. *Wilson*, 70 id. 177.) The question as to whether the receiver was properly before the court, and the mode and substance of the trial, are properly reviewable on an appeal from the judgment. (*Kellum et al.* v. *Durfoo et al.*, 78 N. Y. 484.) The alleged release of Oehninger was simply introduced to establish the sum due the plaintiffs, and cannot be used for any other purpose. (*Woodcock* v. *Roberts*, 66 Barb. 498, 501.) It was ineffectual in any case. (*Harrison* v. *Close*, 2 Johns. 448; *Hoffman* v. *Dunlop*, 1 Barb. 186; *Fellows* v. *Stevens*, 24 Wend. 294, 298–9.) The order allowing the receiver to intervene is an intermediate order, and was specified in the notice of appeal, and necessarily affects the final judgment, and is reviewable hereunder. (Code of Civil Procedure, § 1316; *Kellum* v. *Durfoo*, 78 N. Y. 484; *Kilmer* v. *Hathorn*, id. 228; *Kelly* v. *Sheehan*, 76 id. 325; *Meriden Malleable Iron Co.* v. *Bandman*, 2 Weekly Dig. 591; *Dryfus* v. *Otis*, 54 How. 409; *McHenry* v. *Jewett*, 90 N. Y. 58; *Jordan* v. *N. S. and L. B'k*, 74 id. 467.)

*Lucien Birdseye* for respondents Wettstein and Meyer. Where a contract, whether express or implied, is forbidden by law, whether expressly or by implication, and whether by the common or statute law, no court, whether at law or in equity, will lend its assistance to give it effect. (*Nellis* v. *Clark*, 20 Wend. 24; 4 Hill, 424; *Chamberlain* v. *Barnes*, 26 Barb. 160; *Freelove* v. *Cole*, 41 id. 318, 325; *Porter* v. *Havens*, 37 id. 343; *Hall* v. *Erwin*, 60 id. 349; *Moseley* v. *Moseley*, 15 N. Y. 335; *Starin* v. *Kelly*, 36 N. Y. Supr. Ct. 366, 370; *Smith* v. *Hubbs*, 1 Fairf. 71.) Contracts for the sale of goods are illegal where the goods were bought and sold for the express purpose of being introduced into the country by violations of its revenue laws, and the vendor is either a sharer in the illegal transaction or assisted in defrauding the customs. (*Holman* v. *Johnson*, Cowp. 341; *Biggs* v. *Lawrence*, 3 D. & E. 454; *Clugas* v. *Penaluma*, 4 id. 466; *Wamell* v. *Reed*, 5 id. 599; *Lightfoot* v. *Tenant*, 1 B. & P. 551; *Hodgson* v. *Temple*, 5 Taunt. 181; 1 Eng. C. L. 67; *Morck* v. *Abel*, 3 B. & P. 35; *Van Dyke* v. *Hewitt*, 1 East, 96; *Lowrey* v. *Bourdien*, Douglass, 468; *Armstrong* v. *Armstrong*, 3 My. & K. 45, 64; 8 Eng. Ch. 269, 279; *Pearce* v. *Brooks*, L. R., 1 Ex. 213, 218; *Cowan* v. *Milburn*, L. R., 2 Ex. 230; *The Reward*, 2 Dods. Adm. R. 271; *Simpson* v. *Bloss*, 7 Taunt. 246; 2 E. C. L. 69; *Fivaz* v. *Nichols*, 2 M. Gr. & S. 52; E. C. L. 501; *Hannay* v. *Eve*, 3 Cranch, 242; *Armstrong* v. *Toler*, 1 Wheat. 258; *Duncanson* v. *McLure*, 4 Dallas, 306; *Belding* v. *Pitkin*, 2 Cai. 147, 149; *Woodworth* v. *James*, 2 Johns. Cas. 417; *Whittaker* v. *Cone*, id. 58; *Hunt* v. *Knickerbocker*, 5 Johns. 327; *Graves* v. *Delaplane*, 14 id. 146; *Griswold* v. *Waddington*, 15 id. 57; 16 id. 438; *Patton* v. *Nicholson*, 3 Wheat. 204, 207, note; *Richardson* v. *Maine Ins. Co.*, 6 Mass. 102, 111; *Russell* v. *DeGrand*, 15 id. 35; *Wheeler* v. *Russell*, 17 id. 258; *Mosely* v. *Mosely*, 15 N. Y. 334; *Niver* v. *Best*, 10 Barb. 369; *Merrick* v. *Butler*, 2 Lans. 103; *Steuben Co. B'k* v. *Matthewson*, 5 Hill, 249; *Daimouth* v. *Bennett*, 15 Barb. 541; *Barton* v. *P. J. & U. F. P. R. Co.*, 17 id. 397; *Rose* v. *Truax*, 21 id. 361; *Bell* v. *Leggett*, 7 N. Y. 176; *Coppell* v.

*Hall,* 7 Wall. 542, 558; *Oscanyan* v. *Arms Co.,* 13 Otto, 261, 268–9; *Drexler* v. *Tyrrell,* 15 Nev. 114, 131–140.) If these defendants either knew of the crime, and were participants in it and its fruits, or had just reason to suspect it, and were willing to take their part in its gains, still plaintiffs cannot sustain their action. (*Dwelly* v. *Van Houghton,* 4 N. Y. Leg. Obs. 101, 103–4; *Merritt* v. *Millard,* 3 Abb. App. Dec. 291; 4 Keyes, 213; *Kerrison* v. *Kerrison,* 8 Abb. N. C. 449; *Tracy* v. *Talmadge,* 14 N. Y. 162; *Pepper* v. *Haight,* 20 Barb. 438; *Westfall* v. *Jones,* 23 id. 9; *Schermerhorn* v. *Talman,* 14 N. Y. 93, 141; *Solinger* v. *Earle,* 82 id. 393, 397; *Knowlton* v. *C. & E. Spring Co.,* 57 id. 518, 533.)

*John Hallock Drake* for respondent Mierson, receiver, etc. This appeal does not bring up for review here the order permitting the receiver to make and serve an answer. (Code of Civil Procedure, § 1316; *Barrera* v. *Entensa,* 13 Pittsb. S. J. 341.) A contract founded upon an unlawful act, whether it be *malum prohibitum* or *malum in se,* cannot be enforced by action. (*Smith* v. *City of Albany,* 7 Lans. 4; *Bell* v. *Quinn,* 2 Sandf. 146; *Hamilton* v. *Gridley,* 2 Alb. L. J. 458; 54 Barb. 542; *Graves* v. *Delaplaine,* 14 Johns. 146.)

MILLER, J. This action was brought by the plaintiffs, to recover a balance of $19,492.91 for goods sold and delivered, consigned or caused to be consigned, and for commissions and moneys paid out.

The plaintiffs are residents of Zurich in Switzerland, and in October, 1875, the firm of Wettstein, Oehninger & Co., of the city of New York, ordered goods to be manufactured for them by the plaintiffs, at the price of the material at the time of the order and the cost of manufacturing them. Before the goods were manufactured and shipped, goods of that kind had declined in price in the market of Zurich, from ten to fifteen per cent, and, in consequence of some doubt as to the responsibility of the defendants, the plaintiffs refused to deliver the goods so directed to be manufactured, but stated they would

give Wettstein, Oehninger & Co. credit to the extent of 50,000
francs, and would send on consignment all the goods ordered
and as fast as Wettstein, Oehninger & Co. reduced their in-
debtedness below 50,000 francs, they were to take from the
goods so consigned an amount equal to the difference between
what remained due and the 50,000 francs. Goods were sent
directly to the defendants prior to January 1, 1876, and it
appears that after that time they were sent under the above
arrangement. Upon the trial, evidence was introduced show-
ing that the goods sent after January 1, 1876, were sent
through the custom-house at an alleged undervaluation, and
in violation of the revenue laws of the United States. No
such defense was set up in the answers of the defendants
Wettstein and Meyer. It was, however, interposed in the an-
swer of one Feodore Mierson, who had been appointed re-
ceiver in an action to dissolve the copartnership of Wettstein,
Oehninger & Co. By an order of the Superior Court, made
upon his own application, and dated Dec. 19, 1879, said Mier-
son was made a party defendant to this action, with leave to
answer and defend the same, but no provision was made for
an amendment of the summons and complaint, nor were the
same amended in this respect. The principal evidence to sus-
tain the allegation of an undervaluation, as made in the an-
swer of Mierson, was duplicate invoices which were made of
three shipments of goods of the value in the aggregate of
58,492 francs 70 centimes, which goods Oehninger, then being
one of the firm of Wettstein, Oehninger & Co., testified he
had ordered to be manufactured at a price agreed upon several
months before the shipment thereof. He also testified that
plaintiffs refused to deliver the goods, but offered to consign
them at their own risk, that the duty bills were made at the
actual price of the day at the time the goods were shipped in
Zurich, and that plaintiffs were to invoice the goods at the mar-
ket value. There were only three invoices as to which dupli-
cates were offered in evidence, and there was no duplicate invoice
as to the balance of plaintiffs' claim, to-wit: 31,225 francs 38
centimes, and the claims for commissions were on goods or-

dered by the defendants' firm through plaintiffs from third parties. It would seem, from the evidence, that the goods were plaintiffs' goods, unless the defendants reduced their credit below 50,000 francs, which was not done. If the plaintiffs refused to deliver the goods and they consigned them as their own, it is by no means clear that any offense was committed in violation of the revenue laws. Assuming, however, that a case was made out showing such an offense, it is difficult to see how the original defendants, Wettstein and Meyer, can avail themselves of such a defense. It was neither pleaded nor set up in either of their answers, and therefore they were not in a position upon the trial to insist that the goods shipped to them were fraudulently imported in violation of the laws of the United States, and that for that reason no action would lie by the plaintiffs against them for a recovery of the value of the same.

The cause of action alleged in the complaint was proven as against the defendants Wettstein and Meyer. Even although Mierson, as receiver, established the allegation that the invoices were fraudulent, and that the revenue laws had been violated, we think the plaintiffs were entitled to recover as against Wettstein and Meyer; and the court erred in refusing to direct a verdict in their favor against these defendants, as requested by the plaintiffs' counsel. The most that Mierson had a right to claim was the protection of the funds in his hands as receiver, and a judgment in favor of the plaintiffs, providing that they should have no remedy against the funds in the hands of the receiver, in accordance with one of the requests made by plaintiffs' counsel to charge, which was refused, would have fully protected his rights. Counsel for the defendants insists that they, having proved that the goods sued for and alleged to have been sold at one price, were by the plaintiffs valued and entered at a lower price in the invoices, prepared and transmitted by them with the goods, for the purpose of entering the same in the custom-house, and that plaintiffs had thereby knowingly made, or attempted to make, the entries thereof by means of the false invoices, in consequence of which the goods were for-

feited to the United States, the court was bound to take notice
of the undervaluation, and that the contract proved being
fraudulent by law, the court could not give effect to the same,
and was justified in directing a verdict in favor of the defend-
ants. The correctness of this rule is beyond dispute, and
where it is made to appear, upon the plaintiffs' own proof or
upon a defense interposed by the defendants in due form, that
the contract in question was illegal, and that the goods were
bought and sold for the express purpose of being introduced
into the country in violation of its revenue laws, and that the
vendor is either a sharer in the illegal transaction or assisted in
defrauding the customs, it is a defense to the action, and the
plaintiffs cannot recover. In the case at bar no such facts were
proved by the plaintiffs upon the trial, and no such defense
was set up in the answers of the original defendants. Numer-
ous cases are cited by the respondents' counsel to support the
position contended for, but we think that none of them go to
the extent of holding that such a defense is available under
a state of facts such as is presented upon this appeal. In the
cases cited the illegality of the transaction was either pleaded
or appeared on the plaintiffs' own showing, and the cases which
are specially relied upon do not, we think, show that the de-
fense of illegality was not admissible under the pleadings, or
did not appear upon the plaintiffs' own showing.

The examination which we have given to the question con-
sidered leads us to the conclusion that, inasmuch as the defend-
ants Wettstein and Meyer did not plead the defense of under-
valuation in either of their answers, they were not at liberty
to insist upon the illegality of the transaction. It would seem
that the receiver, who represents the defendants, should not be
permitted to occupy any better position in the defense than
the defendants themselves. His whole title is derived from the
defendants, who do not claim to defend the action upon any
such ground as is set up in the answer of the receiver. The
only ground upon which he can insist on such a defense, which
the defendants refused to make, is that he represents the cred-
itors, and hence it may be required in order to protect their

rights.   This is not enough, and he should not be allowed, on behalf of, and for the benefit of the defendants and without their request or approval and in opposition to their refusal, to insist upon the same.   As we have seen, however, the receiver could not have been injured by a compliance with the last request of the appellants' counsel, which was refused by the court, as the fund in his hands was especially protected thereby.

The court also erred in directing a verdict in favor of the defendants for the reasons already stated ; but independent of these there were no duplicate invoices as to a portion of the account, and for this as well as for the commissions on goods ordered by the defendants of other parties through the plaintiffs, the plaintiffs were clearly entitled to recover.

We also think that the court erred in refusing to submit to the jury the question made as to the credibility of the witness Oehninger.   Although not contradicted, he was an interested party, and had a direct interest in increasing the fund in the hands of the receiver, and in preventing its payment to the plaintiffs.   His evidence was given for the purpose of showing the alleged violation of law by the plaintiffs, and in explanation of the three invoices which were made of the goods, of which duplicates were made, and it was a fair question for the jury to say whether he might not have been influenced by the circumstances stated.   The revenue laws are *malum prohibitum*, and not *malum in se*, and have no extra-territorial force.   The plaintiffs, being foreigners, are not presumed to be acquainted with them, and every intendment is in favor of the plaintiffs.   There was some evidence upon the trial which tended to show that the invoices, alleged to be fraudulent, may have been made in reference to the fall in price of the goods between the time they were ordered and the time they were shipped, and that has an important bearing upon the question arising as to the intent of the plaintiffs.   Inasmuch, however, as a new trial must be granted for the errors already stated, it is not necessary to consider especially the effect to be given to this aspect of the case.

There is another ground which, we think, is fatal to the

judgment in this case, and that is that the order, allowing the receiver to be made a defendant and put in an answer, was improperly granted and hence the defense interposed by him can be of no avail. The question as to its validity is presented for review upon the appeal taken from the order of the General Term affirming the order allowing the receiver to defend, and constitutes a part of the record in this case. Such order we think affects the final judgment and is appealable within the provisions of section 1316 of the Code of Civil Procedure. Without the order the receiver could not have put in an answer, and the judgment rendered is based entirely upon the defense interposed by him, and hence the order is reviewable here. It is manifest that the court erred in granting the order. As a general rule third persons are not allowed to intervene in an action at law upon a contract when they are not parties to, and have no connection with it. The defendants in this case were fully authorized to interpose the defense set up by the receiver; they were acquainted with the facts relating to the sale of the goods and their shipment to this country, and if the invoices were fraudulent, and the revenue laws violated so that no recovery could be had, they had a perfect right to insist upon such a defense. Having failed to do this the presumption is that no such defense in reality existed, or that the defendants, under the circumstances and for satisfactory reasons, did not deem it best to interpose the same. The only ground upon which the receiver asks to intervene is that there was collusion, and his petition states, upon information and belief, that such collusion existed between one or more of the defendants and the plaintiffs. It does not name any one of the defendants and it does not give the source of information, or specify why the statements are not verified by the person from whom such information was obtained. The statements made are mere legal conclusions and not facts, and they are positively denied by the plaintiffs. They are insufficient under the circumstances to support the order. The defendant Oehninger having been released and the complaint having been dismissed as to him, he is not a party and has no interest in the action,

and there being no proof whatever that either of the other defendants were in collusion with the plaintiffs for the purpose of enabling them to obtain a judgment against such defendants, it follows that the order cannot be upheld. We also think that the receiver had no such interest in the action as authorized him to intervene and interpose a defense.

The judgment should be reversed and a new trial granted, with costs to abide the event, and the order appealed from reversed, with costs of appeal in the General Term and in this court, and $10 costs of opposing motion.

All concur.

Judgment and order reversed.