(70 App. Div. 82.)

COVERLY et al. v. TERMINAL WAREHOUSE CO.

(Supreme Court, Appellate Division, First Department. March 7, 1902.)

1. PIER RIGHTS—SALE—CONSIDERATION.

An application for the lease of a pier from the New York City dock department did not vest any property right in the applicants which could furnish consideration for their sale of the pier, or an interest therein, made just prior to a sale of the lease at auction to the highest bidder, who was entitled to the lease, whether he had filed application therefor or not.

2. SAME—ACTION FOR PRICE—PLEADING AND PROOF—DEPARTURE.

In an action by the seller to recover the price agreed to be paid for the sale of a pier, or an interest therein, proof of the buyer's agreement to reimburse plaintiffs for a bonus which they were required to pay to obtain another pier on relinquishment of the one in suit was independent of the alleged sale, and so far a departure from the cause of action as to be fatal to recovery.

8. SAME—AUCTION SALE OF LEASE—AGREEMENT TO RESTRAIN BIDS—INVALIDITY.

Plaintiffs, who were applicants for the lease of a pier from the dock department of New York City, having paid a bonus for another pier to enable defendant to acquire at a sale at public auction to the highest bidder the lease of the former pier, in which neither party had any interest, defendant agreed to reimburse plaintiffs for the bonus paid, with the expectation that plaintiffs would not become bidders at the sale. *Held*, that the agreement was void, as against public policy, as tending to restrain competition at the sale.

Appeal from trial term, New York county.

Action by William Coverly and others against the Terminal Warehouse Company. From a judgment for plaintiffs, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

John M. Bowers, for appellant.
Charles C. Burlingham, for respondents.

HATCH, J. This action was brought to recover upon an agreement under seal made and executed between the parties hereto on the 30th day of January, 1891. By the terms of the agreement the plaintiffs sold to the defendant all their right, title, and interest in and to Pier 57 (New), North river, and all their claim upon the dock department of the city of New York in respect to said pier and in respect to any lease thereof. The consideration for such sale was the sum of $25,000, payable in installments of $2,500 on the 1st day of May in each and every year for a period of 10 years, until the whole sum should be paid. After the making and execution of the agreement, the defendant made payments thereunder in accordance with its terms for a period of 4 years, when it made default and refused to make further payments thereunder. This action was commenced in October, 1897, to recover for the sums falling due for the years 1895, 1896, and 1897. The averments of the complaint show that the action is based exclusively upon the written agreement, and no suggestion is made therein of the right to recover upon any other ground. Issue was joined by the service of an answer setting up the

defense that there was no consideration for the agreement sued upon, and that the plaintiffs had no right, title, or interest in Pier 57, or any claim thereto; that, about the time of the execution of the agreement, the city of New York, under the supervision and direction of the department of docks, was about to lease said pier at public auction, when the plaintiffs, for the purpose of extorting money from the defendant, threatened to attend upon said sale and bid upon the property a sum far in excess of its leasehold value; and that the defendant, believing that the plaintiffs would carry out their threats, and force the bidding for said pier very much in excess of the real market value thereof, made and executed the agreement in question; and, based upon the facts stated in the answer, the defendant claims that said contract tended to stifle competition at such auction sale, and is therefore void as against public policy.

Upon the trial the plaintiffs proved the making and execution of the agreement in question, the default in payment thereunder, and the amount due, together with interest due thereon at the commencement of the action, and rested their case. It is clear, therefore, that both by the complaint and the proof upon the trial the plaintiffs stood squarely upon their right to recover upon the terms of the written agreement. When the plaintiffs had rested, the defendant called as a witness the plaintiff Coverly, who testified, in substance, that the plaintiffs were the agents of the Anchor Line of steamers, and of other lines, and, desiring further wharf accommodations for their business, they made application to the dock department of the city of New York about January, 1889, for a lease of Pier 57, mentioned in the agreement; that subsequent thereto Mr. Rossiter, the president of the defendant, made application to the dock department for a lease of the same pier, and was informed that the plaintiffs had already applied for a lease, and were entitled to consideration. Thereupon, and about two years after the plaintiffs' application had been filed with the dock department, Rossiter applied to the witness Coverly to release the plaintiffs' right in and to the pier, and to seek accommodations elsewhere. After considerable negotiation, the plaintiffs undertook to make an effort to secure other accommodations; the defendant agreeing to pay therefor whatever bonus the plaintiffs were compelled to pay in order to enable them to secure a pier, and leave the defendant to obtain Pier 57. Pursuant to such arrangement, the plaintiffs did succeed in obtaining Pier 54, upon a payment therefor of a $30,000 bonus. While these negotiations were pending, and on the 30th day of December, 1890, the dock department of the city of New York adopted a resolution to lease Pier 57 for a term of 10 years, with privilege of additional renewal for a further term of 10 years at public auction in the board room on Friday, January 30, 1891, at 12 o'clock noon; and pursuant to the negotiation, and just prior to the sale, the parties entered into the agreement the subject of this action.

By the provisions of section 716 of the consolidation act, which was in force at the time these negotiations were had, the dock department was not authorized to make a lease by private contract, except in districts where wharves and piers were appropriated by the department to special commercial interests. All other leases were required

to be made at public auction to the highest bidder. The general power in the department to make leases is contained in section 711 of the consolidation act. In making disposition of this case, we assume that the department of docks could make a lease of this pier by private contract, but they were also invested with power to make such lease at public auction. There is nothing contained in the provisions of the act which vested any right in or to the pier in question upon making application to the board for a lease. Such application could be made by any person or corporation at any time prior to the making of a lease by the department. No property right could be obtained thereunder until a contract was made, binding upon the parties thereto. It is evident, therefore, that the application which the plaintiffs made for a lease of this pier did not vest them with any legal or equitable right therein. Any person had the right, whether he had filed application for a lease of the pier with the dock department or not, to appear and bid at the auction sale, if such sale was determined upon by the department, and was entitled to receive a lease if he bid the highest price therefor offered at the sale, and which the city was willing to accept. The purpose of such a sale is to secure the highest price to the city which interest, under free and open competition, would be willing to give. Every engagement or negotiation which in any manner or form tended to stifle freedom of exercise in this regard was void, as against public policy. When, therefore, Rossiter made application for this pier, he stood upon an equal footing with the plaintiffs, and was possessed of the same legal and equitable right in the premises, and neither of the parties could acquire property right or equitable interest therein save as it was fairly acquired by highest bidding at the auction sale. It follows as an inevitable result that there was no consideration for the agreement in question, as the plaintiffs never acquired, by anything which they did, any property right or other interest which could by any possibility furnish consideration for a sale of the pier, or interest therein. The plaintiffs therefore failed utterly to prove any cause of action, and a verdict should have been directed in favor of the defendant upon the motion made therefor at the close of the trial.

It is said, however, that, although the plaintiffs failed to prove the cause of action averred in the complaint, they did prove a good consideration, based upon the agreement to pay the bonus which they were required to pay to obtain Pier 54. Such agreement, as we view the testimony, was quite independent of the agreement set out in the complaint, and proved by the plaintiffs upon the trial as their cause of action, and was so far a departure therefrom as, if effect be given to it, to authorize a recovery upon a cause of action not alleged, which of itself would be fatal to this recovery, if there were no other infirmity. The court, however, seems to have concluded that the plaintiffs were authorized to recover upon the oral agreement which the defendant had developed in the course of its examination of the witness Coverly, as he submitted such question to the jury, charging that there might be a recovery unless the agreement itself tended to stifle competition at the auction sale. Upon such question the jury found in favor of the plaintiffs. The

question, therefore, which confronts us, assuming that the plaintiffs may avail themselves of it, is whether, upon the evidence, the court was justified in submitting such question to the jury. The court seems to have adopted as the law applicable to the facts the rule as established by the case of Marie v. Garrison, 83 N. Y. 14. That was an action brought to enforce an agreement made upon the foreclosure of a railroad mortgage. The complaint, among other things, averred that the plaintiffs and another person agreed to relinquish their opposition to the mortgage sale,—they being stockholders,—in consideration of the defendants and others being permitted to bid in the road at the foreclosure sale, and issuing to the plaintiffs and others, upon a reorganization of the same, stock of the new company in an equivalent amount of their holdings in the old company. The action sought to enforce a delivery of the stock which the defendant Garrison had refused. The defendants demurred upon the ground of alleged illegality of the contract, as stifling fair competition in bidding at the sale. Upon this subject the court says:

"The plaintiffs, who, together, own a large number of shares, had a right to enter into any arrangement for the protection of their interests not prohibited by law. This was not the case of a combination between persons having no prior interest in the property to suppress bidding at a judicial sale for speculative purposes. The arrangement made was, so far as appears, a reasonable and honest attempt on the part of the plaintiffs to save their property from being sacrificed on foreclosure. The other stockholders and bondholders were at liberty to bid on the sale. The mere fact that an arrangement fairly entered into, with honest motives, for the preservation of existing rights and property, may incidentally restrict competition at a public or judicial sale, does not, we think, render the arrangement illegal. The question of the intent, at all events, is one for the jury, upon the whole facts as they shall appear upon the trial."

Many other cases, both before and since this decision, have enforced the rule there laid down.

It is evident that, aside from the testimony bearing upon the agreement to prevent bidding, there is a radical distinction between that case and this, and to such distinction was attached great, if not controlling, weight. There the parties were all interested in the property, and had a specific property right therein. On account of the magnitude of the interests involved, no person could bid and protect interests unless possessed of very large means. The agreement itself sought to preserve the property for the benefit of all persons interested therein, and, if faithfully carried out, would inure to the benefit of every person in interest. In the present case the parties were without the slightest interest in the property. Each desired to obtain it for his respective purposes, and each was desirous of getting it as cheaply as possible, while the sale was had for the purpose of obtaining the highest price for the benefit of the public. Under such circumstances, there can be no lawful right, either directly or indirectly, to prevent fair public competition. In the language of Judge Folger in respect to such sales:

"The rule is that agreements which in their necessary operation upon the action of the parties to them tend to restrain their natural rivalry and competition, and thus to result in the disadvantage of the public or of third

parties, are against the principle of sound policy and are void." Atcheson v. Mallon, 43 N. Y. 147, 3 Am. Rep. 678.

"In all cases where contracts are claimed to be void as against public policy," says Judge Earl, "it matters not that any particular contract is free from any taint of actual fraud, oppression, or corruption. The law looks to the general tendency of such contracts. The vice is in the very nature of the contract, and it is condemned as belonging to a class which the law will not tolerate." Richardson v. Crandall, 48 N. Y. 348. "The general rules condemning as unlawful combination to prevent bidding at auction sales have with good reason been applied to offers to the government of services or property in response to a call for proposals with a view to contract with the lowest bidder," says Judge Allen; "that is, when the bidding is after what Gulick v. Ward, 10 N. J. Law, 87, called a 'Dutch Auction,'—a bidding downwards." People v. Stephens, 71 N. Y. 527. And the rule is equally applicable where the auction sale is held to obtain an upset bid. Marsh v. Russell, 66 N. Y. 288, 293.

In respect of this matter, Mr. Coverly states that Rossiter asked him "if we would not retire from our pursuit of this pier," and that he talked with him about the sale upon the 30th of January, the day on which it was sold; and further he said:

"We have made outlay in connection with Pier 57. It was the bonus we paid for Pier 54. That had this to do with our obtaining a lease of Pier 57, because they wished us to get out of the way, so that they could have that pier. They said they must have it."

The attention of this witness was called to a conversation respecting his firm being a possible bidder at the auction sale of this pier, had with Mr. Rossiter:

"Q. Do you mean to say you have no recollection of any such conversation, or do you mean to say that none such occurred? A. Well, it might come up in a way. I do not know. I cannot recollect exactly. Q. What do you mean by that statement? A. Well, that Mr. Rossiter might say, 'Now, we do not want you to come and bid against us at that sale.' Q. He might, I know, but did he? A. Well, that was the object of his trying us to get accommodation elsewhere. Q. That was it? A. Yes."

The witness denied that there was any purpose to extort money from the defendant, and that the claim was without foundation; and it is fair to the witness to say that such was never within the contemplation of either party to the contract, and that the fact that the plaintiffs paid $30,000 as a bonus to enable the defendant to obtain this pier is nowhere disputed, nor is the statement in any wise impugned. There was considerable examination of the witness upon the subject of the conversation with respect to plaintiffs' refraining from bidding at the sale, and many questions and answers were asked and given, but the statement which we have quoted was in no substantial respect denied or qualified; and it is clearly evident that it was the intention of the defendant, acquiesced in at least by the plaintiffs, that the execution of the agreement and the payment of the bonus would result in the plaintiffs' failing to become bidders at the sale. The execution of the agreement itself upon the day before the sale, coupled with

the testimony of the plaintiff Coverly, is proof conclusive that its necessary tendency was to restrain the natural rivalry and competition of these parties in bidding at the auction sale, and it resulted in disadvantage to the public. Upon the undisputed proof, therefore, we think that neither the agreement to pay the bonus paid for Pier 54, nor the agreement executed between the parties, can be enforced, and that the same are void as being against public policy, and therefore condemned by the law. If we are right in these views, the court was not authorized to submit any question to the jury. This conclusion renders unnecessary a discussion of the questions raised respecting such submission.

It follows that the judgment and order should be reversed, and a new trial granted, with costs to appellant to abide the event.

VAN BRUNT, P. J., and INGRAHAM and LAUGHLIN, JJ., concur. PATTERSON, J., concurs in result.