(85 App. Div. 488.)

### COVERLY et al. v. TERMINAL WAREHOUSE CO.

(Supreme Court, Appellate Division, First Department. July 7, 1903.)

ACTION ON CONTRACT—DEFENSE OF INVALIDITY ON GROUND OF PUBLIC POLICY—ANSWER—INSUFFICIENCY.

An answer which alleged that plaintiff knew that defendant was desirous of securing from the city of New York a lease of a certain pier; that the city was about to offer such a lease for sale at public auction; that plaintiff threatened to attend the sale and bid on the property, so as to compel defendant to bid a sum greater than the true value thereof, unless he would execute the contract sued on; and that the only purpose in making the agreement was that plaintiff should not force the bidding —raised the question whether the contract was against public policy and void.

2. AUCTION—SALE OF LEASE—AGREEMENT TO RESTRAIN BIDS—INVALIDITY.

When the city of New York was about to sell at auction a lease of a dock belonging to it, plaintiff and defendant, both desiring to purchase it, entered into an agreement whereby defendant agreed to pay plaintiff a sum of money for a release by the latter of his interest in the dock to be sold. Held, that the agreement, the effect of which was to stifle competition at the sale and thereby materially reduce the amount received by the city, was against public policy and void.

3. SAME—ENFORCEMENT OF INVALID AGREEMENT.

An agreement against public policy and void will not be enforced, but the parties will be left in the condition in which they placed themselves.

Appeal from Trial Term, New York County.

Action by William Coverly and others against the Terminal Warehouse Company. From a judgment dismissing the complaint after trial, plaintiffs appeal. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Henry Galbraith Ward, for appellants.

James W. Gerard, for respondent.

INGRAHAM, J. The question of the right of the plaintiffs to recover in this action upon the pleadings was presented to this court upon the former appeal, and it was there determined that the plaintiffs were not entitled to recover. 70 App. Div. 82, 75 N. Y. Supp. 142. The result of the examination of the question upon that appeal is thus summarized by Mr. Justice Hatch:

"The execution of the agreement itself upon the day before the sale, coupled with the testimony of the plaintiff Coverly, is proof conclusive that

---

¶ 2  See Contracts, vol. 11, Cent. Dig. § 655.

the necessary tendency was to restrain the natural rivalry and competition of these parties in bidding at the auction sale, and it resulted in disadvantage to the public. Upon the undisputed proof, therefore, neither the agreement to pay the bonus paid for pier 54, nor the agreement executed between the parties, can be enforced, and the same are void as being against public policy, and, therefore, condemned by the law."

It is not claimed that the evidence upon the new trial is substantially different from that before considered by this court, and a reconsideration of the question upon this appeal has confirmed us in the views expressed upon the former appeal. The plaintiffs now, however, claim that, the defendant having failed to plead that the contract sought to be enforced was against public policy and void, it is unavailable as a defense to the obligation assumed by the defendant under its agreement. The plaintiffs base this position upon Honegger v. Wettstein, 94 N. Y. 252.

While the answer does not expressly allege that the contract was against public policy and void, it does allege the purpose of making the agreement upon which the plaintiffs sought to recover. It is alleged that in the year 1891 the plaintiffs became informed that the defendant was desirous of securing from the city of New York a lease of a certain pier in the city of New York, known as "Pier 57" (new) in the North river; that "the city of New York was about to offer a lease of said pier for sale at public auction, which sale was duly advertised for the 30th day of January, in the year 1891, and which sale was to be made under the supervision and direction of the department of docks"; that "the plaintiffs well knew all the foregoing facts, and that it was of great importance to this defendant to secure this pier, and for the purpose of extorting from this defendant the moneys of this defendant these plaintiffs threatened this defendant, by alleging that they would attend at the said sale of the said leasehold interest in and to the said pier, and that they, knowing that this defendant must bid far to exceed the leasehold value of the said property, did state to the officers and agents of this company that they would force the bidding upon the said property at said sale far to exceed the value thereof, and would compel this defendant to bid a very much greater sum than the true value of said leasehold interest, unless the defendant would execute the contract in suit in this action; * * * and that the only purpose in the making of the said agreement, and the only consideration which could possibly have run from these plaintiffs to this defendant, or did run from these plaintiffs to this defendant, under said agreement, was that these plaintiffs should not carry out the threats which they had made, namely, to force the bidding of said premises far to exceed the real value of the said premises at the sale to be made by the commissioners of the dock department of the city of New York, and by so fraudulently bidding against this defendant as to compel this defendant to pay far in excess of the true value or the market value of the said leasehold premises."

This defense is a statement of the facts which existed when the agreement was made, and the consideration which induced the plaintiffs to demand and the defendant to agree to pay the amount to recover for which this action is brought; and, while the answer does

not characterize the agreement thus sought to be enforced as an agreement against public policy and void, its object, intent, and effect are alleged as a defense to the action, and there is no case which holds that where, as a defense, the defendant alleged that the object and intent of the agreement, and its effect when duly carried out, will be to accomplish an object which is condemned as against public policy, the contract will be enforced. As has been frequently said, the court in refusing to enforce these agreements does so, not because it desires to relieve one of the parties to such an agreement from the obligation that he assumes, but because of the fact that the making of such an agreement is an injury to the public, and that the only method by which the law can prevent such agreements from being made is to refuse to enforce them.

Here the officers of the municipal corporation were about to sell at public auction a lease of a dock belonging to the corporation. Both the plaintiffs and the defendant had desired to obtain this lease. The defendant desired it more than the plaintiffs; and this agreement upon which the plaintiffs' cause of action is based was made, whereby the defendant agreed to pay to the plaintiffs a sum of money for a release by the plaintiffs of their interest in and to the pier that was thus to be sold at public auction. The effect of this agreement was that there was no competition at the public sale of the lease, and thus the amount received by the city for the pier was materially reduced. That such an agreement is a direct injury to the municipal corporation, and prevents its obtaining for its property the price which it would have obtained but for the agreement, is apparent; and such an agreement has been universally condemned, as against public policy and void, and one that the courts will not enforce, irrespective of the rights of either of the parties. That the defendant was as guilty of a violation of public policy as the plaintiffs is conceded; but it was the public that suffered, and the plaintiffs should not be allowed to enforce the contract and obtain the benefit thereof, which we may assume, but for the agreement, would have accrued to the city from an active competition at the sale. Nor are we affected by the moral obligation upon the defendant to comply with its contracts, or the position in which a failure to enforce this contract will leave the defendant, to which the learned counsel for the plaintiffs so feelingly alluded. The law leaves the parties who enter into such contracts in the condition in which they have placed themselves, and will refuse to enforce such a contract, regardless of its effect upon either of the parties thereto.

Honegger v. Wettstein, supra, relied upon by the plaintiffs, is not at all in point. There the contract alleged was for goods sold and delivered. The defense there sought to be interposed was that a certain portion of the goods which had been purchased was sent by the plaintiffs, who were residents of Switzerland, through the custom house, at an undervaluation, and in violation of the revenue laws of the United States. There were only three invoices, as to which duplicates were offered in evidence showing this undervaluation, and there were no duplicate invoices as to the balance of the plaintiffs' claim. In speaking of this defense the court said:

"If the plaintiffs refused to deliver the goods, and they consigned them as their own, it is by no means clear that any offense was committed in violation of the revenue laws. Assuming, however, that a case was made out showing such an offense, it is difficult to see how the original defendants, Wettstein and Meyer, can avail themselves of such a defense. It was neither pleaded nor set up in either of their answers, and therefore they were not in a position upon the trial to insist that the goods shipped to them were fraudulently imported in violation of the laws of the United States, and that for that reason no action would lie by the plaintiffs against them for a recovery of the value of the same."

In that case it was not claimed that there was connected with the original contract for the sale and delivery of the goods any illegal agreement. It was the practice of the plaintiffs in consigning the goods to the defendant which constituted a violation of law which would justify the court in refusing to enforce the original contract of sale; and, as to such a defense, the court held that, to be available, it must be pleaded. In this case, it is the original contract sought to be enforced which is illegal; the foundation of the plaintiffs' claim being a contract made in violation of law and for an illegal purpose.

In Veazey v. Allen, 173 N. Y. 359, 66 N. E. 103, the principle applied in this case was enforced; the court quoting with approval what was said by Lord Chief Justice Wilmot in Low v. Piers, Wilmot's Notes, 378:

"It is the duty of all courts of justice to keep their eyes steadily upon the interests of the public, and even in the administration of commutative justice, and, when they find an action is founded on a claim injurious to the public and which has a bad tendency, to give it no countenance or assistance in foro civili."

And, continuing, says:

"Courts of justice will never recognize or uphold any transaction which in its object, operation, or tendency is calculated to be prejudicial to the public welfare. * * * It may, therefore, be taken for granted that, whenever our courts are called upon to scrutinize a contract which is clearly repugnant to sound morality and civic honesty, they need not look long for a well-fitting definition of public policy, nor hesitate in its practical application to the law of contracts."

It follows that the judgment appealed from is affirmed, with costs. All concur.