BROWN *vs.* PETER BROWN, executor, &c. of Marcus Brown, deceased.

Where a contract is not, of itself and on its face, necessarily illegal and void, the legal presumption is in favor of its validity. But it is only a presumption, and not a conclusive inference.

When a contract is ambiguous, on its face, and it may cover either a legal or an illegal consideration, parol evidence is admissible to determine the intentions of the parties.

Hence, in an action upon a contract for personal services, ambiguous in its terms, parol evidence is admissible, to show what services the parties intended should be performed. This may be shown in a variety of ways; among others, 1. By the declarations and admissions of the parties. 2. By

their acts and proceedings under the contract, giving it a practical construction.

The fact that one of the parties is dead, furnishes no sound reason for not receiving evidence of the intent of the other party, as manifested by his declarations.

A contract for procuring papers, for furnishing information or memoranda, for producing evidence, and for making arguments before the legislature or a committee of that body, in regard to matters of legislative cognizance properly before them, is legal and valid.

But a contract for lobby services, for personal influence, for mere importunities to members of the legislature or other official body, for bribery or corruption, or for seducing or influencing them by any other arguments, persuasions or inducements than such as directly and legitimately bear upon the merits of the pending application, is illegal and against public policy, and void.

Where an agreement is one and entire, if illegal and void in one particular, the illegality penetrates and corrupts the whole agreement, and vitiates it altogether.

In an action upon a contract for personal services, which is held to be illegal and void, the plaintiff cannot recover under the *quantum meruit*, for such of the services rendered as were lawful in their character and not against public policy ; where there is no distinct evidence of their value, and they are blended together, and have not been in any way separated or disconnected from the illegal services, and are not in fact capable of such severance or disconnection.

APPEAL from a judgment entered on the report of a referee. On the 25th day of July, 1845, the testator entered into a written agreement with the plaintiff and Thomas Machin, to pay to them one half of all moneys that might be granted by law or procured by an act of the legislature of the state of New York passing on the claim of Conradt Brown, deceased, who by his last will and testament devised and bequeathed to his son Marcus (the testator) a certain amount of property taken from him by Col. Willett in the revolutionary war, " on the condition that they (plaintiff and Machin) do *obtain a grant* from the legislature, allowing me (testator) pay for the property taken by order of Col. Willett, as above stated, at their own expense, and to save me from all expenses that may accrue hereafter ; and I do agree to furnish such papers, and execute any papers that may be

Brown *v.* Brown.

required, to enable them to obtain the said grant, hereby binding myself, and my heirs, to fulfill the same. Given under my hand this 25th day of July, 1845. MARCUS BROWN."

Under this agreement the plaintiff and Machin proceeded to act. They appeared before the legislature and committees of that body, and individual members thereof, from time to time, in several different years. They procured necessary papers; they furnished evidence and information; they argued the matter to individuals and committees; they importuned members; they exercised their individual influence; they procured and employed others to exercise theirs; and they operated in various other ways to bring about the desired object. Ultimately, in 1857, a law was passed by the legislature authorizing the payment to Marcus Brown, upon this claim, of the sum of $1545.98. Of this sum Machin received one-fourth, $386.49, and the residue was paid to the defendant's testator. The plaintiff demanded of him a like sum, $386.49, which was refused to be paid, and this action was brought to recover the same. Marcus Brown died on the 20th of June, 1857. The cause was referred to a referee, who reported, among other things, that the plaintiff and Machin rendered such services as are before mentioned; that " these efforts, or those of a similar nature, were continued from year to year until an act was passed, April 7, 1857, for the relief of Marcus Brown, (*Laws of* 1857, *ch.* 761;) that from the date of said instrument until the final passage of said act, the plaintiff and said Machin expended money from time to time in endeavoring to procure the passage of the law, but by far the greatest portion of their expenditures to that end, so far as appears by the evidence, was in procuring others to use their personal influence with members of the legislature, in order to secure its passage." And he found, among other conclusions of law, " that the instrument upon which this action is founded is void on its face, being conditioned to procure the enactment of a private statute, and providing, in its spirit and intent, for the performance of lobby services; that

the plaintiff and Machin did not obtain the passage of the act, except in such manner and by such means as were illegal and contrary to public policy; that the legal services were so intermingled with the immoral and illegal services rendered by them, that the performance of the condition of said instrument, and the whole service, became so tainted, that the courts ought not to lend their aid in declaring the performance sufficient to maintain the action. The plaintiff having excepted to the report, judgment was perfected for the defendant, and the plaintiff appealed.

*Lyman Tremain,* for the plaintiff, (appellant.)

*James E. Dewey,* for the defendant, (respondent.)

*By the Court,* HOGEBOOM, J. The contract sued on is not of itself and on its face necessarily illegal and void. In such case the legal presumption is in favor of its validity. But it is only a presumption, and not a conclusive inference. On its face the contract is ambiguous. It may cover a *legal* or an *illegal* consideration. It is susceptible of either construction.

In such case parol evidence is admissible to determine the intentions of the parties, as to the nature and character of the services to be rendered. This does not violate the rule that a written instrument cannot be contradicted by parol. The object of the evidence is not to contradict the instrument, but to apply it to the objects intended. The evidence is of a suppletory character, and is always admissible. The circumstances and situation of the parties, so far as they bear upon the effect of the contract, may always be proved, to give it application and effect. There probably never was a written instrument in the world which did not require some extrinsic evidence to give it application. (*Phelps* v. *Bostwick,* 22 *Barb.* 314, 317. *Cole* v. *Wendel,* 8 *John.* 116. *Waldron* v. *Willard,* 17 *N. Y. Rep.* 468. *Davison* v. *Seymour,* 1

*Bosw.* 94. *Perkins* v. *Goodman,* 21 *Barb.* 218. *Sheldon* v. *Peck,* 13 *id.* 317. *Agawam Bank* v. *Strever,* 18 *N. Y. Rep.* 508. 2 *Parsons on Contracts, 2d ed.* 76.)

Parol evidence was therefore admissible to show what services the parties intended should be performed in obtaining the grant from the legislature. This may be shown in a variety of ways; and among others, 1. By the declarations and admissions of the parties. 2. By their acts and proceedings under the contract, giving it a practical construction.

That the defendants' testator is dead, furnishes no sound reason for not taking evidence of the intent of the other party—the plaintiff—who is the claimant and prosecutor, which would be conclusive or at least operative against him. His declarations were therefore admissible.

A contract for procuring papers, for furnishing information or memoranda, for producing evidence, for making arguments, before the legislature or a committee of that body, in regard to matters of legislative cognizance properly before them, is legal and valid. (*Sedgwick* v. *Stanton,* 14 *N. Y. Rep.* 289. *Jenkins* v. *Hooker,* 19 *Barb.* 435.)

A contract for lobby services, for personal influence, for mere importunities to members of the legislature, or other official body, for bribery or corruption, or for seducing or influencing them by any other arguments, persuasions or inducements than such as directly and legitimately bear upon the merits of the pending application, is illegal and against public policy and void. (*Sedgwick* v. *Stanton,* 14 *N. Y. Rep.* 289. *Harris* v. *Roof,* 10 *Barb.* 493. *Gray* v. *Hook,* 4 *Comst.* 456. *Marshall* v. *Balt. and Ohio R. R. Co.,* 16 *How. (U. S.) Rep.* 314, 334. *Davison* v. *Seymour,* 1 *Bosw.* 89, 94. *Fuller* v. *Duane,* 18 *Pick.* 481.)

The referee has found, upon sufficient evidence, that the contract in question was illegal and void. His finding that upon its face it is so, may not be correct, unless taken in connection with the evidence which gives it point and application. But his finding that it originated in a corrupt purpose, and

had an illegal object, is borne out by the evidence; at least sufficiently so to prevent its being set aside for that reason.

The services in question were intended to be and were rendered under this contract, and therefore compensation for them is not recoverable in this action. The contract is one and entire; it cannot be partly legal and partly illegal. The illegality penetrates and corrupts the whole contract, and vitiates it altogether. This is a necessary consequence of the unity and entirety of the contract. (*Brown* v. *Treat*, 1 *Hill*, 225. *Suydam* v. *Smith*, 7 *id.* 182. *Miller* v. *Scherder*, 2 *Comst.* 262. *Lambert* v. *Snow*, 17 *How.* 517. *McGovern* v. *Payn*, 32 *Barb.* 91.)

Nor can the plaintiff, I think, under the evidence and in the aspect which the case presents, recover under the *quantum meruit*, for such of the services rendered as were lawful in their character and not against public policy; for 1. There is no distinct evidence of their value; they have not been in any way appraised. They were not sought to be recovered under a *quantum meruit*. 2. They have not been in any way separated or disconnected from the illegal services. They were all performed together, or in common. The referee declares his inability to discriminate between them. 3. They were not in fact capable of such severance or disconnection. They were blended together. They were sometimes parcel of the same act. They probably sprang from the same vicious fountain. There is no means of disentangling them. (*Rose* v. *Truax*, 21 *Barb.* 361.)

As my opinion is adverse to the plaintiff upon the merits of the case, it is unnecessary to examine the question whether the non-joinder of Machin with Brown as a co-plaintiff, presented a valid objection to the plaintiff's recovery.

The judgment entered upon the report of the referee should be *affirmed*.

[ALBANY GENERAL TERM, March 4, 1861. *Gould, Hogeboom* and *Peckham*, Justices.]