Russell v. Burton.

————————•◆•————————

## WILLIAM A. RUSSELL *vs.* OSCAR A. BURTON.

66  539
127a 375
66  539
81h 183
66b 539
56ad252

66b     539
173 NY⁴372

The rule is firmly established that when the evidence, as to the existence of an alleged fact, is conflicting, the finding of the referee upon the question concludes the parties.

In such a case, the findings of the referee will be reversed or overruled, on appeal, only when clearly unsupported by, or when against, the evidence.

The defence that the contract sued on is void because against public policy and contrary to good morals, need not be set up in the pleadings. Before a recovery can be had by the plaintiff, he is bound to prove a valid, binding contract. Such proof is indispensable to a right of action; and the immorality of the alleged agreement can be insisted on under an answer containing a general denial.

In an action to recover for services alleged to have been rendered by the plaintiff for the defendant, under an agreement, the referee found that the defendant employed the plaintiff to act as his agent, and to give his attention and services in and about making, preparing and prosecuting a certain claim which the defendant had against the state, before the legislature, and in preparing and perfecting a bill to be prosecuted before said legislature, for the settling and paying of such claim, and ascertaining the amount. That the plaintiff should make the necessary statements of the facts and attend before

Russell *v.* Burton.

the proper committees of either or both houses, prepared to argue the same, if necessary; and that he should do all that was necessary and proper to be done to ensure its passage; and that for such services, the defendant promised and agreed to pay the plaintiff the sum of $1,500, out of the first moneys he should receive on account of the claim. *Held* that there was nothing of an illegal character expressly stipulated .for, in the agreement; and that the contract as proved and found was not, of itself, and by its terms, necessarily illegal and void.

*Held, also,* that the legal presumption was in favor of its validity; that it might or might not cover an illegal consideration. Hence it fell within the province of the referee to determine, from the whole case, whether illegal services were in the contemplation of the contracting parties.

And the referee having, upon conflicting evidence, found, in effect, that none but legal services were stipulated for or contemplated, by the parties; it was *held* that the court was not at liberty to say that he had found erroneously, . or erroneously refused to find as requested.

One who has a claim against the state may employ competent persons to aid him in obtaining appropriate legislation, to the end that his claim may be recognized and satisfied.

APPEAL by the. defendant from a judgment entered upon the report of a referee. The action was brought upon a contract.

*James Gibson,* for the appellant.

*C. L. Allen* and *John McFarland,* for the respondent.

BOCKES, J. In 1859 the defendant was the owner of an interest in certain property and real estate situated in northern New York, known as the Averill Ore Bed, and of a claim against the state for its use and occupation and for alleged injuries thereto, in regard to which claim legislation was necessary, to answer the wishes and purposes of the owner.

The complaint charges that the defendant, in January of that year, employed the plaintiff to act as his counsel and to bestow his attention and services in and about maturing, preparing and prosecuting such claim before the legislature of the state, and in preparing and perfecting a bill to be presented to the legislature settling

Russell *v.* Burton.

and paying the same, and to that end to attend and make the necessary statements of fact before the proper committees of both houses; for which service the defendant agreed to pay the plaintiff the sum of $1,500 as soon as any moneys were received by him on account of the claim, if the bill should become a law. It was further alleged that the plaintiff performed the agreement on his part, and that the bill in contemplation of the parties passed the legislature and became a law; and further, that the defendant received on his claim, pursuant to the provisions of such law, the sum of $13,125.

The defendant, by his answer, denied making such contract *in toto;* and averred, on information and belief, that one J. D. Kingsland employed the plaintiff to perform the service on his own account, said Kingsland having a contract with the defendant and his associates in regard to the aforesaid claim against the state.

The action was tried before a referee, who, on the evidence adduced before him, found and decided, in substance, that the facts stated in the complaint were true, and directed judgment against the defendant for $1,500 and interest. From the judgment entered pursuant to such direction the defendant appealed to the General Term.

The counsel for the appellant in his brief and points asks a reversal of the judgment on three points: *First.* That no such agreement as that set out in the complaint and found by the referee was established by the evidence. *Second.* That the contract proved, if any was established, was void because against public policy, contrary to good morals and necessarily tended to impede and impair sound legislation; and, *Third.* That the referee erred both in his findings of fact and law, and in his refusal to find as requested.

The questions thus presented will be examined in the order in which they are submitted for our examination.

As regards the *first* point, we are concluded by the

finding of the referee, according to numerous decisions both in this court and in the Court of Appeals. The rule is firmly established that when the evidence as to the existence of an alleged fact is conflicting, the finding of the referee upon the question concludes the parties. (*Ball* v. *Loomis*, 29 *N. Y.* 412. *Merrill* v. *Grinnell*, 30 *id.* 594. *Woodruff* v. *McGrath*, 32 *id.* 255. *Davis* v. *Allen*, 3 *id.* 168. *Westerlo* v. *De Witt*, 36 *id.* 340. *Brown* v. *Brown*, 34 *Barb.* 533–537. *Dunning* v. *Roberts*, 35 *id.* 463–468. *Sinclair* v. *Tallmadge*, 35 *id.* 602. *Woodin* v. *Foster*, 16 *id.* 146. *Van Steenburgh* v. *Hoffman*, 15 *id.* 28. *Colwell* v. *Lawrence*, 24 *How.* 324. *Strittmacher* v. *Salina, &c., Plank Road Co.*, 34 *id.* 74. *Artisans' Bank* v. *Backus*, 31 *id.* 254.)

In several of these cases the Court of Appeals reversed the decision of the Supreme Court, because the latter court interfered with the findings of the referee on questions of fact as to which there was a conflict of evidence. It is undoubtedly the duty of this court to review the findings of the referee on the facts, as provided in sections 272 and 268 of the Code. Still his findings will be reversed or overruled, on appeal, only when clearly unsupported by, or when against, the evidence. Such is not this case. The agreement counted on and found by the referee is distinctly sworn to by the plaintiff, and he is corroborated to a considerable extent by several witnesses. It is true the defendant denies that such or any agreement whatever was made between him and the plaintiff, and there are some facts and circumstances in corroboration of, or tending to corroborate, his denial. The case was therefore a proper one for determination by the referee on full and careful consideration of all the evidence, and his findings must be accepted as conclusive on this appeal, to the extent that a contract *in terms* substantially as stated in the complaint was entered into by and between the parties.

*Second.* Was the contract void because against public

Russell *v.* Burton.

policy, contrary to good morals, and necessarily tending to impede and impair sound legislation?

It is suggested in answer to this point that this defence was not set up in the pleadings. This, however, was unnecessary. Before a recovery could be had by the plaintiff he was bound to prove a valid, binding contract. Such proof was indispensable to a right of action; and the immorality of the alleged agreement could be insisted on under an answer containing a general denial. If the agreement was immoral and against public policy, the plaintiff showed no right of recovery, and the objection would be taken by the court, even if not urged by the party. In *Lyon* v. *Mitchell*, (36 *N. Y.* 235,) the invalidity of the contract was not pleaded, but the court held that the question of its invalidity was nevertheless a subject for its consideration. Indeed this was the only subject of any importance discussed in the court. The question then is, was the contract found by the referee in the case in hand against public policy and void? If, as is charged against it, the contract was for "lobby services" in the legislature, it was corrupt and void. Such contracts ever have received, and it is to be hoped ever will receive, ready denunciation from the courts. Their tendency is to mislead and corrupt public officers in the exercise of their duties, and being repugnant to justice and contrary to good morals, they are void. The cases holding this doctrine are too numerous to require more than general citation. The following are sufficient. (36 *N. Y.* 235. 10 *Barb.* 489. 21 *id.* 361. 34 *id.* 533. 36 *id.* 474.) But it is also decided, and it is undoubtedly sound law, that one who has a claim against the state may employ competent persons to aid him in obtaining appropriate legislation, to the end that his claim may be recognized and satisfied. Judge Selden says, in *Sedgwick* v. *Stanton*, (14 *N. Y.* 289–294,) that persons may no doubt be employed to conduct an application to the legislature as well as to

conduct a suit at law, and may contract for and receive pay for their services in preparing documents, collecting evidence, making statements of facts, or preparing and making oral or written arguments, provided all these are used or designed to be used before the legislature itself, or some committee thereof, as a body; but they cannot with propriety be employed to exert their personal influence with individual members out of the legislative halls. The learned judge adds: "Whatever is laid before the legislature in writing, or spoken openly or publicly in its presence or that of a committee, if false in fact, may be disproved, or if wrong in argument, may be refuted, but that which is whispered into the private ear of individual members is frequently beyond the reach of correction." And the learned judge further adds: "The point of the objection in this class of cases is, the personal and private nature of the services to be rendered."

These views of Judge Selden received the sanction, or are in strict conformity with the decision, in *Jenkins* v. *Hooker*, (19 *Barb.* 438.) In that case Jenkins was employed by Hooker to prosecute his claim for an increased pension, the latter agreeing to give the former, in case of success, one-third of the increase which should be obtained. Jenkins had a recovery, and the Supreme Court, on appeal, affirmed the judgment, holding that the services agreed to be rendered were legal services. In *Marshall* v. *The Baltimore and Ohio R. R.* (16 *How. U. S.* 314,) it is laid down that a contract for *secret influence* with a view to affect legislation is void. The *secret* and *personal* character of the service was here also recognized as the point of objection. See also *Norris* v. *Un. Tool Co.* (2 *Wallace*, 43.) It was said in *Lyon* v. *Mitchell*, (36 *N. Y.* 235–241,) per Hunt, J.: "It is allowable to employ counsel to appear before a legislative committee, or before the legislature itself, to advocate or oppose a measure in which the individual

Russell *v.* Burton.

has an interest." The learned judge adds: "for an honest purpose avowed to the body before which the appearance is made, and by the use of just arguments and sound reasoning, this is lawful." Brown, J., says, in *Mills* v. *Mills*, (36 *Barb.* 481,) that a person may be lawfully employed "to prosecute *a private claim* * * without a breach of moral duty, to collect information, prepare statements and furnish arguments, freely and openly, to a legislative committee in favor of any public measure which might *incidentally* benefit individals." Now, in the light of these authorities, let us turn our attention to the contract proved and certified by the referee in this case at bar.

The referee finds that the defendant agreed with and employed the plaintiff to act as his agent, and to give his attention and services in and about making, preparing and prosecuting his, defendant's, claim before the legislature of the state, and in preparing and perfecting a certain bill to be prosecuted before said legislature for the settling and paying the said claim of the defendant and his associates, and ascertaining the amount to which they were entitled. And it was agreed that the plaintiff should make the necessary statements of the facts of the case and attend before the proper committees of either or both houses of said legislature, prepared to argue the same, if necessary; and that he should do all that was necessary and proper to be done to insure its passage; and for such services the defendant promised and agreed to pay the plaintiff the sum of $1,500, out of the first money he should receive on account of the claim. Most clearly there was nothing of an illegal character expressly stipulated for in this agreement; no secret service was promised, nor can we see that personal solicitation of members of the legislature was in fact intended. The agreement contained no stipulation for service of a personal or private nature, which, as Judge Selden remarks, is the point of objection in this

class of cases. On the contrary, the contract by its terms was for open public services all legal in character, according to the cases above cited. In those cases the law is declared to be that a person may be legally employed to appear and urge the claim of another before the legislature or before committees of either house, may be employed to prepare documents, collect evidence, make statements of facts and openly and publicly argue the case before the appropriate body having the matter in charge. The contract between the parties, as found by the referee, proposed in terms nothing more than this; and was not therefore of necessity immoral or prejudicial to sound legislation. But it is urged that the parties intended the performance of "lobby services," and in fact bargained for them, hence that the referee erred in holding that such services were not in contemplation of the agreement. So it is insisted, *thirdly*, that the referee erred in his finding of fact and law and in his refusal to find as requested. These alleged errors consist in this: that the referee found the contract valid, instead of finding that it was for "lobby services," or contemplated "lobby services," as requested, and in awarding judgment against the defendant instead of dismissing the complaint.

Under this point it is insisted that the agreement was proven, even according to the evidence of the plaintiff himself, to embrace or contemplate "lobby services." And in support of this position we are referred to various passages in the testimony which, as is claimed, prove this beyond controversy. It was proved that the plaintiff was employed to take charge of the bill, and to urge its passage; that he was urged to drive it, and spare nothing that was necessary to get it through.

The plaintiff testified that the defendant wanted him to "take charge of the matter and not neglect it, and do everything that was necessary to insure the success of the application;" that he promised to take charge of

Russell *v.* Burton.

the matter ; "that he promised to do everything neces-
sary to secure its passage." There are also other clauses
in his testimony, of similar import. But neither singly
nor considered together do these passages by necessary
implication carry the idea that the plaintiff was to act
improperly or unlawfully in the matter. In terms, as
found, the contract does not embrace or even hint at
illegal services, and when read with the other evidence
bearing directly on the subject of the contract, they are
certainly susceptible of an entirely innocent construction.

To adopt the language of Judge Hogeboom, in sub-
stance, in *Brown* v. *Brown*, (34 *Barb.* 533, 536,) the
contract as proved and found is not of itself, and by its
terms, necessarily illegal and void. The legal presump-
tion is in favor of its validity. It may or may not cover
an illegal consideration. Thus it fell within the prov-
ince of the referee to determine from the whole case
whether illegal services were in the contemplation of the
contracting parties. It is urged here, as it ought to be,
and undoubtedly was, before the referee, that the plain-
tiff did in fact perform "lobby services," and thus gave
the agreement an emphatic and practical construction.
One witness spoke to this point. He says : "Mr. Rus-
sell talked with individual members of the committee—
did not know all he said—this was after the committee
adjourned—heard him urge the passage of the bill to
individual members of the committee and to the com-
mittee together—saw him talking with members of the
house ; he advocated the bill before the committee—and
before individual members of the legislature ; he button-
holed the members, and buzzed in their ears."

These services were doubtless "lobby services." But
were they in contemplation of the parties, when the
contract was made? Were they services beyond and
outside the contract—gratuitous? From the fact that
they were performed in furtherance of the general object
of the contract, it would not be unfair, perhaps, to infer

that the parties understood and expected that they were covered by its provisions; and had the referee so found, and held the contract immoral and invalid in consequence, his decision would doubtless have been allowed to stand.

But this question was for him on all the evidence, and he has found, in effect, that none but legal services were stipulated for or contemplated by the parties. Contracts like the one under consideration are open to the severest criticism—the gravest suspicion. Their tendency is corrupting, and too often a vicious purpose is veiled by the fairest words. So, also, when entered into with the utmost integrity of purpose, they place the employed under strong temptations. His recompense is made to depend on success. There exists a powerful inducement for the exercise of secret and improper influence to be exerted upon those whose power of resistance is, as has been often found, inadequate for the occasion. These agreements are frequently, indeed it may be safely said are generally, corrupt. They are always corrupting in tendency. Yet they may have an honest conception, and may be fairly and honorably performed. If made with a view to open public services in aid of a just purpose, the contract is neither immoral nor illegal. And when, as in the case at bar, the contract is not illegal in any of its provisions, invalidity becomes a question of fact, on the evidence. As the case comes before us, therefore, we must hold that it was the province of the referee to determine in that regard, as a question of fact or evidence which it was his duty to weigh and consider; hence we are not at liberty to say that he has found erroneously, or erroneously refused to find as requested.

As to the numerous rulings of the referee in admitting and rejecting evidence, to which exceptions were interposed, no suggestion of error is made by the appellant's counsel, in his brief and points. Our conclusion

therefore is, after a careful consideration of the case, that the judgment must be affirmed.

JAMES, J., concurred.

ROSEKRANS and POTTER, JJ. We concur in the above opinion. It is unnecessary to say what our views of the case might be if we had the power to review the facts. The Court of Appeals has held that we have not that power, in a case when there is a conflict of evidence.

Judgment affirmed.

[ST. LAWRENCE GENERAL TERM, October 1, 1867. *Bockes, James, Rosekrans* and *Potter*, Justices.]