(19 Misc. Rep. 19.)

KEARNS v. NEW YORK & COLLEGE POINT FERRY CO.

(Supreme Court, Appellate Term, First Department. December 28, 1896.)

1. CORPORATIONS—CONTRACTS WITH DIRECTORS—VALIDITY.
   A resolution fixing the salary of an officer is rendered voidable merely, and not void, by the fact that such officer, as director, voted for the resolution, where the by-laws of the corporation authorized the directors to fix the salaries of its officers, and his vote was not necessary to carry the resolution, and the salary was reasonable. 40 N. Y. Supp. 366, affirmed.

2. ACTIONS ON CONTRACT—GENERAL DENIAL—DEFENSE — INVALIDITY OF CONTRACT.
   Under a general denial, in an action on contract, the defense of the invalidity of the contract cannot be made, where the contract is merely voidable, but not void.

Appeal from city court of New York, general term.

Action by Bernard T. Kearns against the New York & College Point Ferry Company. From a judgment of the city court (40 N. Y. Supp. 366) affirming a judgment in favor of plaintiff, defendant appeals. Affirmed.

The action was brought by the former president of the defendant company to recover salary under a resolution of the board of directors adopted during his term of office. The defense was a denial of knowledge or information sufficient to form a belief as to the truth of the allegations of the complaint.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

W. J. Foster and Foster & Foster, for appellant.
David McClure and Turner, McClure & Rolston, for respondent.

DALY, P. J. The issue raised by the answer was the truth of the allegations of the complaint that the plaintiff was elected president of the defendant company; that thereafter, and on the same day, by a resolution unanimously adopted by the company, the annual salary of the president was fixed at the sum of $2,000, to commence on the 1st day of May, 1889; and that the plaintiff, immediately after his election as president, entered upon the discharge of his duties, and so continued until about October 24, 1889.

It was proved, upon the trial, that the by-laws of the company provided that the board of directors should have the management and control of the affairs and business of the corporation, and employ such agents and employés as they deemed advisable, and should fix the rate of compensation of all officers, agents, and employés; that the plaintiff was elected president at a meeting of the board of directors on March 7, 1889, at which meeting he and four other direct-

ors were present; and that then, on motion, it was unanimously re solved that the annual salary of the president should be fixed at $2,000, to commence on the 1st of May, 1889. This meeting was held at the office of the counsel of the company at 120 Broadway, and the minutes of the meeting were kept by the counsel, and were produced on the trial, but had never been transcribed into the minute book while he was connected with the company. The minutes were taken down by the counsel at the request of the secretary. After his election the plaintiff acted as president, and also as manager, and gave actual personal attention to the duties of the office until he ceased to be president in October, 1889, when he sold out his interest, or disposed of his stock to certain parties under a previous arrangement, resigning his office both as director and president.

At the close of the plaintiff's evidence, a motion for the dismissal of the complaint was denied, and a verdict in the plaintiff's favor directed by the court. The question before us is whether the defense suggested by the motion to dismiss is available to the defendant under the pleadings. The motion to dismiss was made upon the ground that, according to the testimony, the plaintiff, as one of the directors and officers of the company, presided, and voted himself a salary, in violation of the provisions of the statute of this state, and in violation of the rules laid down which prohibit a recovery, in any case of a corporation, where the officer, presiding at the meeting, or the officer, as one of the directors, voted a salary for himself, and that the mere fact that he was present and took part as a director, and voted for the resolutions, because they were unanimously adopted, brings the case within the rule cited as fraudulent against the defendant.

No defense based upon invalidity of the contract was pleaded in the answer, which only contained a general denial. "Under a general denial, the rule undoubtedly is that, if the illegality of the contract sued upon appears on the face of the complaint, or necessarily appears from the plaintiff's evidence, advantage may be taken of it by the defendant." Milbank v. Jones, 127 N. Y. 370, 28 N. E. 31. But the contract in this case was not illegal. The by-laws authorized the board of directors to fix the rate of compensation of officers, and, unless the company disaffirmed the action of the board, it was bound by the contract thus made. A contract between a trustee of a corporation and the board of which he is himself a member is not void, but voidable at the election of the company. Illegal or unlawful contracts only are void, and the case above quoted and the authorities cited in it in illustration of the doctrine exemplify what are to be understood as unlawful contracts. They are such as contravene public policy or good morals,—such, for instance, as contracts for services to influence legislation, or the acts of public officers or agents, and the like. Cary v. Telegraph Co., 20 Abb. N. C. 333; Oscanyan v. Arms Co., 103 U. S. 261; Russell v. Burton, 66 Barb. 539.

Agreements which can lawfully be performed by consent are not illegal or void. If the invalidity of the contract is because of its

contravention of a public statute intended for the protection of the parties, and the benefit of which may be waived, the defense of invalidity is not available under a general denial, but must be pleaded. So with the defense of the statute of frauds (Crane v. Powell, 139 N. Y. 379, 34 N. E. 911), the defense of usury, and defenses founded upon the statute against betting and gaming, where, the contract not being immoral, the party privileged to avoid it for any cause may waive his privilege, and elect to treat the agreement as valid.

The case is different with contracts in contravention of public policy, which the courts will refuse their aid in enforcing, notwithstanding the parties may waive the objection. The distinction is indicated in the case of Oscanyan v. Arms Co., supra, which was an action by a Turkish consul general at the port of New York to recover for services rendered the defendant in influencing the Turkish agent sent to this country to examine and report in regard to the purchase of arms. The court said:

"The court will not listen to claims founded upon services rendered in violation of common decency, public morality, or the law. History furnishes instances of robbery, arson, and other crimes committed for hire. If, after receiving a pardon, or suffering the punishment imposed upon him, the culprit should sue the instigator of the crime for the promised reward,—if we may suppose that audacity could go so far,—the court would not hesitate a moment in dismissing his case, and sending him from its presence, whatever might be the character of the defense. It would not be restrained by defects of pleading, nor, indeed, could it be by the defendant's waiver, if we may suppose that in such a matter it would be offered. What is so obvious in a case of such aggravated criminality as the one supposed is equally true in all cases where the services for which compensation is claimed are forbidden by law, or condemned by public decency or morality."

A transaction in violation of the revenue laws, and in fraud of the government, is of the same character. Honegger v. Wettstein, 94 N. Y. 252. The cases of Milbank v. Jones, Cary v. Telegraph Co., and Russell v. Borton were on contracts to influence legislation.

The rule that the invalidity of the contract will be considered, irrespective of the pleading or the waiver of the parties, manifestly will not apply in cases where the question of invalidity simply affects an individual privilege. The present is a case of that character, as the law does not absolutely prohibit dealings between directors and their corporations. Oil Co. v. Marbury, 91 U. S. 587. In many cases such contracts are highly beneficial to the corporation, and have been upheld, and the law will not forbid them, lest the corporation may be deprived of its most natural source of help in time of need. If made in good faith, and providently, they will be enforced. Thus, in McNab v. Manufacturing Co., 62 Hun, 18, 16 N. Y. Supp. 448, a resolution voting a salary to an officer was upheld. The company had six directors, and at a meeting at which five were present the salary of each as an officer or employé was increased. This act was upheld upon the ground that the administration of the officers of the company had been eminently successful, and that, merely because they were directors, they were not precluded from being reasonably paid for their services; also, upon the ground that there was no evidence that the resolutions increasing the salaries were the re-

sult of a combination, either fraudulent or innocent, or of preconsid-
ered action on the part of the trustees.    It was said:

"If the action of the trustees, under all the circumstances of this case, was in
this particular illegal, then it is impossible legally to afford adequate compensa-
tion to the officers of a corporation where an inadequate salary has once been
fixed."

The judgment was affirmed by the court of appeals.    133 N. Y.
687, 31 N. E. 627.

A different question might be presented if the directors exceeded
their authority in voting the salary.    Kelsey v. Sargeant, 40 Hun,
150.    But in this case the directors acted within the power con-
ferred upon them by the by-laws, and there was no evidence of bad
faith.

It might have been within the right or power of the corporation
to disaffirm the action of the board in giving a salary to the presi-
dent, but, until such disaffirmance, the contract was enforceable, and
no ratification was needed to make it binding.    The plaintiff, there-
fore, was required only to allege and prove the contract to entitle
him to recover, unless the defendant set up facts showing the bad
faith of the directors.    It was required to allege and prove such
facts, and its repudiation of the contract.    As the answer contained
no such defense, and none was disclosed by the plaintiff's proof,
the plaintiff was entitled to a verdict.

There were three exceptions to rulings upon the evidence.    The
plaintiff, having stated, on cross-examination, that there was an ar-
rangement, through his attorneys, with Mr. Coleman for the sale
of the stock, was asked what was said about his salary at the time
of that transfer.    This was objected to as immaterial, and the objec-
tion sustained.    He was next asked:

"Q. Now, in turning over that ferry company, did you not make out a state-
ment, both of the assets and property of that ferry company, and also of its out-
standing liabilities?"

This question was objected to on the ground that there was no
evidence that the witness turned over,—only that he sold his stock
to two individuals.    The objection was sustained, and the defendant
excepted.    The defendant's counsel then offered to prove that the
statement of the assets and liabilities of the company was prepared
by the witness, or under his supervision, and that his claim herein
is not on the list of liabilities of the company.    It was excluded, and
an exception taken.

It is claimed that this evidence was competent and material, as a
part of the res gestæ, and as a foundation of an equitable estoppel,
as affirmative proof could then have been given that such statement
and acts influenced the conduct of his successors.    But, as pointed
out by the respondent in his objection, there is no evidence that the
plaintiff turned over the property of the ferry company.    He had
expressly stated that he did not know anything as to such transfer,
and that he merely sold out his interest to Messrs. Coleman and
Joyce under a previous arrangement.    What relation those gentle-
men had to the company, if any, had not been shown; and the offer
of proof did not include the particulars necessary to constitute the

defense now suggested, because it did not show that the statement was prepared for the purpose of inducing a sale of the plaintiff's interest, nor that the purchasers relied thereon. I think that the evidence might have been competent on the question of fact as to the adoption of the resolution in question; but no such point was made upon the trial, and the evidence was offered in support of a defense which was not pleaded, and would not be sustained by the facts, including the suggested facts embraced in the defendant's offer of proof.

Judgment affirmed, with costs.     All concur.