DRAKE v. LAUER et al.

(Supreme Court, Appellate Division, Fourth Department. March 8, 1904.)

1. CONTRACTS—ILLEGALITY—NECESSITY OF PLEADING.

Where the general public is affected by a contract violating a particular statute or the provisions of any public law, and the enforcement of rights arising thereunder is opposed to good morals or sound public policy, the courts will refuse their aid to parties so contracting, although the illegality of the contract is not pleaded.

2. SAME—INTENTION OF PARTIES—ACTS NOT CONTEMPLATED.

In order to invalidate a contract as contravening good morals or public policy, it should appear that the agreement contemplated the illegal or immoral acts, and it is not sufficient that condemnable acts were done thereunder, if they were not contemplated by the agreement.

3. SAME—POLITICAL FAVORITISM.

A contract for services in securing contracts by favoritism from state officers, by reason of social and political relations with such officers, is void as against public policy.

4. SAME—PART PERFORMANCE—ENFORCEMENT.

Where the general public is affected by a contract violating the law, the courts will refuse their aid to the parties and leave them as they found them, although the contract has been performed by one party, so that the other has received the benefits thereof without giving anything in return.

Hiscock and Williams, JJ., dissenting.

Appeal from Special Term, Monroe County.

Action by John N. Drake against Frederick C. Lauer and others. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

John Van Voorhis & Sons, for appellant.
Wile & Oviatt, for respondents.

STOVER, J. This is an action brought by an assignee for an alleged balance due under a contract for the rendition of services.

The complaint alleges that one C. was employed to assist defendants "in getting contracts from the state to enable them to perform work for the state upon the said Erie Canal, and to assist them in prosecuting

¶ 3. See Contracts, vol. 11, Cent. Dig. §§ 606, 607.

such work." There is no specification in the complaint as to the character of the services which were to be performed by C. in obtaining contracts from the state. There are some allegations with regard to services performed by C. after the contract had been let, which services the referee has found to be of slight value. The answer denies the making of the contract and the rendition of the services. The referee found that in the fall of 1896 the defendants entered into an agreement with C. to pay C. one-third of the profits which they might realize upon all contracts secured from the state for canal work, in consideration whereof said C. agreed to secure for defendants information from the office of the State Engineer and Surveyor at Albany in regard to the Engineer's estimates of the probable cost of the work for which they contemplated submitting competitive bids, and otherwise to render assistance to said firm at Albany in securing contracts for such work, and favoritism from state officers during performance, by means of his political and social relations and influence with such state officers. He also found that some minor services were rendered, but not at the request of the defendants, nor was it contemplated that such services were to be paid for. The referee found that the contract was void as against public policy, and that the complaint should be dismissed.

It is urged upon appeal that the objection that the contract was void as against public policy was not raised by the pleadings, and could not be considered. We think the better rule is laid down in Dunham v. Hastings Pavement Co., 56 App. Div. 244, 67 N. Y. Supp. 632, namely:

"Where the statute is provided for the protection of parties, and the benefit taken thereby may be waived, the defense of invalidity must be pleaded, or the defendant cannot avail himself of it. The rule is otherwise, however, where the general public is affected by the violation of the particular statute, or the provisions of any public law; in such case the enforcement of rights arising thereunder is or may be opposed to good morals or a sound public policy, and courts will refuse their aid to parties so contracting, and will in every instance leave them as it found them. In such a case it is not necessarily essential that the illegality be pleaded. Courts of their own motion will interfere and deny the right to any relief thereunder, without reference to the state of the pleadings."

Drake v. Siebold, 81 Hun, 178, 30 N. Y. Supp. 697; Oscanyan v. Arms Co., 103 U. S. 261, 26 L. Ed. 539; Kearns v. N. Y. & C. P. Ferry Co., 19 Misc. Rep. 19, 42 N. Y. Supp. 771.

It is urged, again, that the proof does not warrant the finding that the contract was against public policy. In order to invalidate the contract, it should appear that the agreement itself contemplated illegal acts, or acts condemned as against good morals or public policy. It is not sufficient that acts were done which might be condemned, but the test is the intention of the parties—what acts were contemplated by them to be performed in carrying out the agreement. Here, we think, has arisen an apparent conflict in some of the adjudicated cases. The rule was laid down in Mills v. Mills, 40 N. Y. 543, 100 Am. Dec. 535. In that case the contract was that the plaintiff "would give all the aid in his power, and spend such reasonable time as may be necessary, and generally use his utmost influence and exertions, to procure the passage into a law of the said bill heretofore introduced into the

Senate of the state of New York, as hereinbefore mentioned, or any other bill to the same end"; and it was this feature of the agreement which was condemned as against public policy, the court using this language:

"It is not suggested that the plaintiff was a professional man, whose calling it was to address legislative committees. It is not suggested that he had any claim of right which he proposed to advocate, and which right or debt he proposed to transfer to the defendant. He had simply asked of the Legislature the privilege or favor to be granted to him of building and operating a railroad upon certain streets in the city of Brooklyn. This privilege may be assumed to be of pecuniary value. To procure the passage of such a law for the benefit of the defendant, he undertook to use his utmost influence and exertions. This contract is void as against public policy. It is a contract leading to secret, improper, and corrupt tampering with legislative action. [Citing cases.] It is not necessary to adjudge that the parties stipulated for corrupt action, or that they intended that secret and improper resorts should be had. It is enough that the contract tends directly to those results. * * * It tends to subject the Legislature to influences destructive of its character, and fatal to public confidence in its action."

This rule, so far as adjudications are concerned, was held until the case of Chesebrough v. Conover, 140 N. Y. 382, 35 N. E. 633. In that case the contract was that the plaintiff would assist in obtaining rights, privileges, and franchises, and draw up the papers, acts, and resolutions "to be presented to parties to the Legislature, and to the common council, * * * and go to Albany and use arguments," etc. In that case it appeared that the plaintiff had no connection with the Legislature, was not a lobbyist, and had no acquaintance or influence with any member of the Legislature; and it did not appear that he had any peculiar facilities for procuring legislation, or that he asked or solicited any member of the Legislature to vote for the bills, or that he did anything except to explain them and request their introduction; and that he could do without violating any public policy. It was there said: "It must be the right of every citizen who is interested in any proposed legislation to employ an agent, for compensation payable to him, to draft his bill and explain it to any committee, or to any member of a committee, or of the Legislature, fairly and openly, and to ask to have it introduced;" the holding in that case being: "Contracts which do not provide for more, and services which do not go farther, in our judgment, violate no principle of law or rule of public policy." The distinction between the two cases may be made, and, as the language in the earlier case is not applicable to the later case, it cannot be said that the later case has overruled the earlier doctrine. But we think the distinction between contracts which provide for services fair and open, and those which contemplate the rendition of secret services leading to acts of favoritism or unfairness on the part of public officials, is still recognized, and the rule applied accordingly. So, in the case under consideration, the complaint upon its face does not state the character of services which were to be rendered, and the referee has found that the services which were contemplated by the parties were such as would fall under the condemnation of the law; for it needs no argument to reach the conclusion that a contract for services in securing contracts by favoritism from state officers, by reason of social and polit-

ical relations with such state officers, would be void and against public policy. An examination of the evidence, while not conclusive, as, from the very circumstances, evidence of these transactions could not be, shows that it warrants the finding of the referee. The principal service rendered prior to the obtaining of contracts on the part of plaintiff's assignor was the obtaining from the office of the State Engineer the estimates of the cost of the work, which were not open to other bidders upon the work. The plaintiff's assignor was not unfamiliar with this class of work, as he has testified that his business in Albany for several years was protecting corporations from legislation which he characterizes as "strike" legislation. So that, the referee having found the fact, and as, under the pleadings, this might properly be raised as a question of fact, we see no error in this disposition of the case.

But the further objection is taken that the defendants are not in position to avail themselves of the illegality of the contract, as they have the fruits of the illegal acts. We are not unmindful of the language of some of the adjudicated cases as to the right of a party to repudiate a contract after having received the fruits of the agreement, yet we are not pointed to any adjudicated case which has held that a contract, void as against good morals and public policy, will be enforced as against either party under a rule which is applied only in cases in equity, in order to prevent a failure of justice. But, as stated in Dunham v. Hastings Pavement Co., supra, where the general public is affected by the violation of the law, courts will refuse their aid to the parties, and will, in every instance, leave them as they found them. If this were not so, courts would be compelled to enforce contracts, illegal and void as against public policy, in every instance where a part performance could be predicated. Such cannot be the condition of the law.

The judgment should be affirmed, with costs.

McLENNAN, P. J., and SPRING, J., concur. WILLIAMS, J., dissents.

HISCOCK, J. (dissenting). I am unable to concur in an affirmance of the judgment appealed from, and think the same should be reversed because defendants did not plead the defense upon which judgment was awarded in their favor by the referee. Their answer did not in any manner allege or set forth the claim that the contract upon which plaintiff based his action was opposed to public policy and illegal. The answer did, in addition to various specific denials and allegations not material upon this question, contain a general denial.

I think it must be conceded that it did not appear upon the face of the complaint or necessarily from the evidence given in behalf of plaintiff, that the alleged contract was illegal. No such claim is advanced, either in the opinion or the report of the referee, or in the brief for the respondents, or the prevailing opinion. In fact, the reasoning and arguments adopted exclude such idea. This being the case, I think that both authority and the general principles of

practice and pleading required that defendants should plead the defense upon which they relied to defeat an apparently valid contract. It would seem as if this rule were plainly and decisively laid down in Milbank v. Jones, 127 N. Y. 370, 375, 28 N. E. 31, 24 Am. St. Rep. 454. See, also, Coverly v. Terminal Warehouse Co., 85 App. Div. 488, 83 N. Y. Supp. 369.

Reliance is placed upon Dunham v. Hastings Pavement Co., 56 App. Div. 244, 67 N. Y. Supp. 632, as laying down the rule that the defense that a contract is illegal and void, because in contravention of good morals or of sound public policy, need not be pleaded where the interests of the general public are involved; that the courts in such case will of their own motion refuse their aid to parties so contracting. Apparently this case does lay down such rule, but the authorities in the appellate courts upon which it relies for this doctrine do not sustain it. In the case of Drake v. Siebold, 81 Hun, 178, 30 N. Y. Supp. 697, the court placed its decision squarely upon the ground that the invalidity of the contract sought to be enforced appeared upon the presentation thereof by the plaintiff upon the trial, and therefore it was not necessary to plead its illegality. At the same time this case distinctly holds that if the contract, as alleged and proved by a plaintiff, is valid on its face, the defense that it is in fact against public policy and illegal is not available unless especially pleaded. The case of Oscanyan v. Arms Co., 103 U. S. 261, 26 L. Ed. 539, also cited, is expressly distinguished in the case of Milbank v. Jones, already cited, and it appears that there the complaint was dismissed on the opening of plaintiff's counsel, because it appeared therefrom that the contract relied on was illegal. We therefore find that the doctrine of the Dunham Case not only is not sustained by the authorities referred to, but it is expressly at variance with the decision of the Court of Appeals.

It is argued by respondents' counsel that this ground of reversal is not available to plaintiff because he did not seasonably object that the defense was not pleaded. There was no opportunity for him so to do sooner than he has. The record before us does not disclose that, at any time during the trial, defendants so urged or suggested this defense as to call upon plaintiff for any objection. So far as can be discovered, all of the evidence offered might be introduced upon and under the other issues raised by the pleadings, and there is nothing to indicate that plaintiff had any notice or warning that the defense in question would be urged until after the report of the referee had been made.

Under these circumstances, I think the judgment should be reversed.