(92 Misc. Rep. 42)

### D. APPLETON & CO. v. WARBASSE.

(Supreme Court, Special Term, New York County.   October, 1915.)

CONTRACTS ⊜108—VALIDITY—ILLEGAL CONTRACTS.

    An agreement whereby the author of a work on animal experimentation covenanted that it should contain no libelous or otherwise injurious matter, and that he would hold the publisher harmless by reason of any recovery for any injurious or libelous matter alleged to be contained therein, is legal and valid, there being no contemplation for the publication of any libel; hence, where suit brought against the publisher for libel was defended and settled at the request and with the consent of the author, the publisher may recover on the covenant.

    [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 498-503, 505, 507-511; Dec. Dig. ⊜108.]

Action by D. Appleton & Co. against James P. Warbasse. On motion by defendant for judgment on the pleadings. Motion denied.

Sullivan & Cromwell, of New York City, for plaintiff.
Herbert N. Warbasse, of Brooklyn, for defendant.

SHEARN, J. This action is brought upon a contract made in November, 1909, between the parties, whereby the plaintiff, which is a well-known publishing house, agreed to publish a book to be thereafter written by the defendant, a surgeon, upon the subject of "Animal Experimentation." The contract contained this provision:

"The author further covenants and represents that the said work contains no matter which, if published, will be libelous or otherwise injurious, * * * and that he will hold harmless and defend D. Appleton & Co. against any suit, claim, demand, or recovery by reason of * * * any injurious or libelous matter alleged to be contained in said work."

After the book was published, a lady residing in England claimed that certain matter which it contained was libelous of her, and brought suit against both parties in the English courts. The plaintiff herein notified the defendant herein, and defendant thereupon admitted his liability to pay any costs and expenses which might be incurred in the defense of the action, and requested the plaintiff to employ solicitors in Great Britain to appear and defend for both defendants. D. Appleton & Co. complied with this request, and paid both the expenses of defending that action. The action was never brought to

---

trial, but was eventually settled with the advice, consent, approval, and authority of the defendant herein. After the matter had been closed and the outlay ascertained, plaintiff requested the defendant to make good this sum in accordance with the provision of the contract. The defendant refused, and, when sued, set up the claim that the contract, although fully performed by the plaintiff, and although he had accepted the fruits thereof, was not binding upon him, because immoral and against public policy.

The question arises upon defendant's motion for judgment upon the pleadings. The validity of the contract is to be determined as of the time when the parties entered into it.

"In order to invalidate the contract, it should appear that the agreement itself contemplated illegal acts, or acts condemned as against good morals or public policy. It is not sufficient that acts were done which might be condemned, but the test is the intention of the parties—what acts were contemplated by them to be performed in carrying out the agreement." Drake v. Lauer, 93 App. Div. 86, 86 N. Y. Supp. 986, affirmed 182 N. Y. 533, 75 N. E. 1129.

The contract in suit was one for the publication of a book which, at the time the contract was made, was still to be written upon a subject in the handling of which it was not natural to anticipate a libel upon anybody, to wit: "The conquest of disease through animal experimentation." Nevertheless, the publishers inserted in the contract the clause indemnifying them against vexatious litigation, which clause is commonly used by book publishers. The contract, therefore, was not one which contemplated the publication of a libel or the commission of a wrong against any party. It was a contract, on the contrary, by which the publisher sought to place the author under the strongest incentive to use care, to the end that no matter injurious to any party should be contained in the book. No case has been found in this state in which the validity of such a contract has been questioned. There is, however, a well-considered case in the Massachusetts Reports in which the same question was raised, and the provisions of the contract there under consideration were sustained as valid. I think that case states the law sensibly and forcefully:

"The case stands on grounds entirely different from those on which it would stand if it appeared that the parties intended to publish or contemplated the publication of libelous matter. There is nothing in the agreement fairly to show that such was their purpose. The most that can be said is that though there was no intention to write or publish, nor any contemplation of writing or publishing, libelous matter on the part of the author or publisher, it might turn out after the book was published that it did contain libelous matter. But that is very far from saying that the parties had in view an illegal purpose in publishing the book. We see nothing unlawful in a contract which provides, without anything more, that the author shall indemnify the publisher for costs and damages to which he may be subjected by reason of the publication of a book to be written by the author. Moreover, it was possible in this case that the book might not contain libelous matter, although libel suits against the publisher might grow out of it. It would be hard to say in such event that the publisher, who might have published the book without any libelous purpose, and in the full belief that it contained nothing libelous, could not recover of the author under this clause in the contract the costs and damages to which he had been put by such suits. In order, we think, to render the contract unlawful, it should appear that there was an intention on the part of the author and publisher to write and publish libelous matter,

or that the author proposed, with the knowledge and acquiescence of the publisher, to write libelous matter, or that the contract on its face provided for or promoted an illegal act." Jewett Pub. Co. v. Butler, 159 Mass. 517, 34 N. E. 1087.

The line of cases relied upon by defendant, in which parties have conspired to do wrongful and unlawful acts, and contracts of indemnity between the wrongdoers have been condemned, have no application here. If two parties conspire to libel a third, of course, the law will not sustain or enforce a contract between them whereby one undertakes to protect the other from the consequences of their wrongful act. If two parties unite, intending to commit any species of wrongful act against the person or property of another, it is clear that no court would sustain an action based upon the promise of one of the wrongdoers to indemnify the other in consideration of his participation in the wrong. Obviously, however, no such case is here presented, nor is it necessary to distinguish cases of this character. Furthermore, there are several classes of cases in which the law sustains or even implies agreements of indemnity between the parties who are liable as joint tort-feasors where the party to be indemnified was innocent of actual wrongful intention. Such are Stone v. Hooker, 9 Cow. 154; Brooklyn Central R. Co. v. Brooklyn City R. R. Co., 47 N. Y. 475, 7 Am. Rep. 469; Bailey v. Bussing, 28 Conn. 455.

Motion for judgment denied, with $10 costs.